UNITED STATES, Appellee

v

LUIS "J." PEREZ, Corporal, U. S. Marine Corps, Appellant

18 USCMA 24, 39 CMR 24

No. 21,080

November 22, 1968

*Harvey A. Leve, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Commander Frank A. Nelson,* JAGC, USN, *Lieutenant Robert F. Baldwin,* JAGC, USNR, and *Lieutenant Stephen W. Grafman,* JAGC, USNR.

*Lieutenant H. L. Moore,* JAGC, USNR, argued the cause for Appellee,

United States. With him on the brief were *Colonel C. R. Larouche*, USMC, *Commander Walter F. Brown*, JAGC, USN, and *Lieutenant William A. Carnahan*, JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

On June 15, 1967, a general court-martial in DaNang, Republic of Vietnam, convicted the accused of several offenses, in violation of the Uniform Code of Military Justice, 10 USC § 801, *et seq*. On review, a board of review set aside some of the findings of guilty and modified the sentence, which includes a dishonorable discharge. We granted further review.

In his first assignment of error, the accused contends he was denied adequate opportunity to retain civilian counsel. The assignment is predicated upon averments in two affidavits filed in the case when the record was before the board of review. One affidavit is by the accused. In it, he asserts he first met appointed military counsel on May 8, 1967. About a month later, he wrote to his parents in New York requesting them to communicate with two civilian lawyers, one in New York and the other in Washington, D. C. He allegedly told his parents he would accept either lawyer, but if they were not available he would like to have recommendations for other counsel from these lawyers. While awaiting a reply to his letter, he asked his appointed military counsel to obtain a five-day postponement of the trial, which was scheduled for June 15, 1967, to determine "whether civilian counsel had accepted" his case. The accused contends no action was taken on his request, so he repeated it on the day of trial. However, military counsel informed him that it was then too late to secure the delay. The accused pleaded guilty to several of the charges and not guilty to the others; he adhered to the plea after an out-of-court hearing to determine his understanding of the meaning and effect of the plea, and the voluntariness of his decision to enter it. After the trial, the accused was returned to the brig. At that time, he allegedly received a letter from his parents advising him that a Bangkok lawyer had indicated he would accept the case. The Bangkok lawyer never communicated directly with the accused, but the accused assumed he "must have contacted the command" because his parents later informed him that the lawyer had been told he "had already been tried" and he suggested they "should get another lawyer to represent" the accused on appeal.

The second affidavit is by the accused's mother. She avers that the accused wrote of his difficulties in May 1967. In early June, he again wrote to say "he was to be tried by a general court-martial," and he "asked" that they "obtain a civilian counsel to represent him." The New York lawyer mentioned by the accused was out of town but his associates suggested the name of an American attorney in Bangkok. The parents wrote to the accused to advise him they "decided that . . . [they] would retain" this lawyer, and they cabled the lawyer. The lawyer's office replied that the attorney was in Saigon. Later, the attorney cabled requesting additional information to locate the accused. Particulars were provided by cable. Several days later, the attorney cabled to say that the accused had already been tried.

The Government has filed an affidavit by military counsel who defended the accused at the court-martial. His account corroborates some parts of accused's affidavit with additional detail, but other important particulars directly contradict assertions by the accused. The major parts of agreement and difference are summarized in the appendix to this opinion. Suffice it to note here, the accused alleges that, at the beginning of the trial, he renewed his request to defense counsel to obtain a continuance until he could determine whether civilian counsel would represent him, whereas appointed defense

**25**

counsel contends that he conferred with the accused two days before trial, and the accused expressed his willingness to be tried on the scheduled date, and did not thereafter request a delay or continuance.

A number of circumstances tend to support appointed defense counsel's account of the extent of accused's interest in civilian counsel. For example, in normal practice the accused and his counsel would discuss the nature of the accused's plea before the trial, as appointed defense counsel maintains he and the accused did; and if such discussion was held, it is extremely unlikely that the accused would agree to plead guilty, and actually enter a plea of guilty to several of the charges at the trial, as the accused did, without first deciding that he was willing to proceed without a reply from his parents about the results of their inquiry into representation by civilian counsel. It is significant that the accused has never expressly stated he was not willing to go to trial on June 15, without civilian counsel. Also, the accused's recollection of certain related events appears to be so faulty as to place in serious doubt the accuracy of his recollection of the critical events. For example, he avers in his affidavit that when he was returned to the brig after his conviction on June 15, he received a letter from his parents informing him that a civilian lawyer in Bangkok *"had contacted them* [in reply to a cable from his parents], and that *he would accept my case."* (Emphasis supplied.) Copies of several cables are annexed to the affidavit by the accused's mother. Two of these demonstrate that the accused is definitely in error as to the contents of the letter he purportedly received on June 15. The first cable is a copy of one addressed to an attorney in Bangkok asking whether he could defend the accused; that cable was filed in New York on June 19, four days after the accused's

trial; and the reply from the attorney, which was received by the accused's parents on June 21, does not agree to accept the accused's case, but merely advises that the attorney was unable to locate him without information as to his rank, branch of service, and whereabouts. A comparison of the matter-of-fact and detailed nature of the affidavit of appointed defense counsel with the subtle phrasings of the accused's affidavit, which leave much to inference rather than direct assertion of fact, inclines us to give more weight to the former than the latter. However, the evidence before us does not so compellingly demonstrate an accuracy of recollection by one as opposed to the other on the question of the accused's desire to obtain civilian counsel to represent him as to justify determination of the issue on the basis of the affidavits.[1] United States v Hood, 9 USCMA 558, 26 CMR 338. In our opinion, a hearing is required at which witnesses may testify and be cross-examined. United States v DuBay, 17 USCMA 147, 37 CMR 411; see also United States v Whitley, 18 USCMA 20, 39 CMR 20.

In his second assignment of error, the accused contends that the specification of Charge I and the specifications of additional Charge II fail to allege an offense in that the order in each specification is not a general order, with the result that the specification should, but does not, contain an allegation that the accused had knowledge of the order. The alleged order is I Corps Coordinator Instruction 1050.B, defining, in part, curfew hours and off-limits areas. In United States v Tassos, 18 USCMA 12, 39 CMR 12, we considered a similar contention. We determined that, in the areas alleged, the Instruction was not operative as a general order and that charges alleging similar viola-

---

[1] The disposition we direct makes it unnecessary to consider the legality of the staff legal officer's ruling on the defense request for a continuance. See Manual for Courts-Martial, United States, 1951, paragraph 58*e*; United States v Thornton, 8 USCMA 446, 449, 24 CMR 256.

tions of the Instruction were legally insufficient.

The decision of the board of review is reversed. The findings of guilty of Charge I and its specification and Additional Charge II and its specifications and the sentence are set aside. The record of trial is returned to the board of review for reassessment of the sentence on the basis of the remaining findings of guilty. Thereafter, the board of review shall take such action as will assure a full and impartial hearing on the question whether the accused was willing to go to trial without first determining whether he could obtain civilian counsel to represent him. If the board of review determines from the evidence that the accused freely and voluntarily waived his right to be represented at the trial by civilian counsel of his choice, it may affirm the conviction; if, however, it determines that the accused desired representation by civilian counsel at the trial, and that he was deprived of adequate opportunity to obtain such counsel, it may direct a rehearing or other appropriate disposition of the charges of which the accused stands convicted. United States v DuBay, supra, at page 149; see also Campbell v United States, 365 US 85, 5 L Ed 2d 428, 81 S Ct 421 (1961); 373 US 487, 489, 10 L Ed 2d 501, 83 S Ct 1356 (1963). The decision of the board of review on this issue may be appealed to this Court under the provisions of Article 67, Uniform Code of Military Justice, 10 USC § 867.

Judge FERGUSON concurs.

## APPENDIX

Comparison of the accused's affidavit with affidavit of appointed defense counsel.

| Accused | Counsel |
|---|---|
| Agreement | |
| 1. On May 8, 1967, he saw appointed defense counsel and was informed "he was willing to accept my case." | 1. He interviewed the accused on May 8, 1967, and advised him of his rights to counsel, including the right to retain civilian counsel. The accused said "it was his desire to have civilian lawyer counsel" and he requested appointed counsel to "inquire into the availability of civilian counsel." Appointed defense counsel consulted other military lawyers in the command to determine the availability of civilian lawyers in Da-Nang. |
| | On May 9, 1967, appointed defense counsel informed the accused civilian counsel were unavailable in DaNang and that the "estimated expenses" of retaining such counsel "from without" Vietnam "would be in excess of $2000.00." Thereupon, the accused signed a written retainer indicating he knew he could retain civilian counsel at his own expense, but of his "own free will" he "accept[ed]" appointed defense counsel to represent him. |

| | |
|---|---|
| 2. Approximately a month later he wrote to his parents telling them "to contact a lawyer." He named two lawyers, one in New York, the other in Washington, D. C. He obtained these names from a book in defense counsel's office. | 2. "Approximately ten days before trial," the accused told appointed defense counsel that "several days previously he had written to his parents to contact a civilian lawyer." In a conversation with the accused, which may have taken place "in early June," appointed defense counsel discussed with the accused the possibility of conviction and the accused's representation by a civilian lawyer before the board of review and the United States Court of Military Appeals. He made available to the accused the Martindale-Hubbell Law Directory for the names of civilian lawyers in New York and Washington, D.C. |
| 3. "Almost immediately after writing the letter" the accused talked to appointed defense counsel. He knew the trial was scheduled for June 15. | 3. Apparently in the same conversation as noted above, appointed defense counsel told the accused that the trial was scheduled for June 15. |
| 4. The accused asked appointed defense counsel if he could get a five-day delay in the trial. Counsel said "that he would look into the matter." | 4. Informed that the accused had written his parents "to contact a civilian lawyer," appointed defense counsel "immediately requested a delay from Trial Counsel" for the "reasons given by" the accused. (As noted below, the accused and appointed defense counsel are in conflict as to the "reasons" for the accused's desire for postponement.) |

Differences

| | |
|---|---|
| 1. Although far from stating the point clearly and directly, the accused appears to contend he told appointed defense counsel that his reason for requesting the delay was: "I was awaiting confirmation as to whether civilian counsel had accepted my case." | 1. The accused told him that he had requested his parents to contact a civilian lawyer merely " 'to look into the case.' " He "pressed" the accused as to what "needed" to be looked into, but the accused "avoided answering." |
| 2. The accused did not again see appointed defense counsel until the day of trial. | 2. On June 10, he told the accused that he had conferred with the staff legal officer "concerning the delay," and had been advised "delay would be denied unless a better reason was presented." Again, the accused refused to disclose the contents of the letter to his parents and would only say that he had asked them "to contact a lawyer to 'look into the case.' " The accused indicated that he expected an |

answer "to several questions about the trial."

On June 13, he conferred with the accused. He informed the accused of his plan of procedure at trial. He and the accused discussed the probable pleas to be entered by the accused and various other matters of evidence. Also discussed was a motion for continuance. Appointed defense counsel told the accused that a continuance could be obtained for "a sufficient reason." The accused stated he "was willing to be tried" on June 15.

3. On June 15, before the trial started, the accused asked appointed defense counsel about the delay and was advised "to wait until the court actually started." When the first witness was called, the accused again asked appointed defense counsel about the delay. This time he was told: "[I]t was too late because the court had already started."

3. At no time after June 13, did the accused talk to appointed defense counsel about a delay in, or continuance of, the trial.