UNITED STATES, Appellee

v

JULIAN R. RAY, JR., Electronics Technician (Communications), Third Class, U. S. Navy, Appellant

20 USCMA 331, 43 CMR 171

No. 23,024

February 12, 1971

*Lieutenant George F. McGunnigle, Jr.*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Colonel Charles J. Keever*, USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Thomas J. Donegan, Jr.*, JAGC, USNR.

## Opinion of the Court

DARDEN, Judge:

The appeal in this case centers on two issues: (1) whether the board of review erred by authorizing a post-trial hearing on a speedy trial issue, and (2) whether the appellant was deprived of a speedy trial.

Pursuant to a pretrial agreement following negotiations between counsel and the law officer that resulted in the dismissal of some specifications and the reduction of an offense alleged in another, the appellant pleaded guilty to a variety of offenses. The charges involved conspiracy to sell marihuana; wrongful possession, sale, and use of marihuana; wrongful sale of dexedrine tablets; and unauthorized absence. Ray received a sentence to a bad-conduct discharge, total forfeitures, confinement at hard labor for twelve months, and reduction in grade. This sentence was approved by the convening authority.

On June 17, 1969, in an action described as an interlocutory order, the board of review took up the subject of speedy trial, an issue that had been raised by the defense at the trial below. Considering the question, the board noted that counsel for the Government gave a lengthy statement detailing events pertinent to the issue. Unable to obtain agreement on a stipulation that would confirm all the events, trial counsel requested a continuance so that he might secure the presence of the legal officer, Naval Air Station, Oceana, Virginia. This officer had been on emergency leave. Despite the absence of such a chronology, however, the board of review observed that counsel did agree on some significant facts that need not be documented here. The board of review noted that on the basis of such agreement the law officer ruled against the defense motion. After this ruling the trial counsel withdrew his request for continuance. With the record in this state, the board of review reasoned:

"On the basis of the entire record, we are satisfied that the trial counsel demonstrated to the law officer that he possessed or could produce sufficient evidence to show prima facie that the government had complied substantially with Articles 10 and 33, UCMJ. Unfortunately, however, the law officer did not permit or require the trial counsel to spread upon the record the evidence bearing on the issue in order that reviewing authorities might weigh the evidence and make an informed judgement as to whether the accused had, in fact, been deprived of a substantive right by virtue of the government's inaction. In this omission we believe that the law officer erred.

"We do not believe that this error prejudiced the substantial rights of the appellant nor do we believe that the government should suffer the severe penalty of having the charges dismissed without being granted an opportunity to demonstrate that it did, in fact, proceed with reasonable diligence in bringing the appellant to trial. See United States v Goode, 17 USCMA 584, 38 CMR 382; United States v Lipovsky, 17 USCMA 510, 38 CMR 308; United States v Thomas, 13 USCMA 163, 32 CMR 163, Cf. United States v Schalck, 14 USCMA 371, 34 CMR 151.

"From what has been said heretofore we believe that a hearing is required for the purpose of inquiring into the following issue of fact:

"Did the government comply with Articles 10 and 33 in bringing the appellant to trial following his apprehension and initial confinement on 29

332

June 1968? See United States v DuBay, 17 USCMA 147, 37 CMR 411; United States v Perez, 18 USCMA 24, 39 CMR 24.

"Accordingly, the Judge Advocate General of the Navy is requested to take such action as may be required to assure that a full and impartial hearing may be held before one or more military Judges of the Navy-Marine Corps Judiciary Activity for the purpose of receiving all available evidence bearing on the issue of fact specified above. It is further requested that a verbatim record of the hearing be provided for consideration by the Board in the further review of appellant's case."

The board of review's order satisfied neither party. Appellate defense counsel sought its withdrawal, arguing that the Government should not be given the chance to relitigate the issue. Government counsel wanted the order expanded to include inquiry into the *reasonableness* of the speed with which accused was brought to trial. Modification was also requested so that the Judge Advocate General of the Navy could return the case with direction to the convening authority to hold a rehearing, *if possible,* or otherwise to dismiss the charges. If a rehearing was held, the Government asked that the military judge presiding be authorized to dismiss the charges, if upon the evidence he believed that dismissal was appropriate.

On July 10, 1969, having reconsidered their original action pursuant to the requests of opposing counsel, the board of review declined to withdraw or to modify the original order.

The post-trial proceeding held August 8, 1969, at Headquarters, Fifth Naval District, Norfolk, Virginia, consists of the testimony of four prosecution witnesses and of one for the defense, two exhibits introduced by the prosecution, and three others introduced by the defense. Written briefs by counsel for each side accompanied the record. After considering the information contained in this supplementation and aided by further argument of counsel,

the Court of Military Review[1] decided on January 30, 1970, that at the time of the Government's accountability under the provisions of Article 10, Uniform Code of Military Justice, 10 USC § 810, Ray was already aware of the charges that had been previously investigated and "must have known also that he would have to answer for his unauthorized absence." In the United States Navy Court of Military Review's judgment:

"Our examination of the record in the instant case fails to reveal that there were any willful, purposeful, vexatious, or oppressive periods of inactivity in bringing this accused to trial. *United States v Brown, supra.* While the record portrays something less than 'constant motion,' we are satisfied that the government proceeded to trial with 'reasonable diligence.' *United States v Tibbs, supra;* Cf. *United States v Barnet,* NCM 69 0588, decided 26 May 1969. It follows that we find no prejudice to the substantial rights of the accused and, therefore, reject the first assignment of error."

Appellate counsel for Ray argue that the path taken by the Court of Military Review in this case "has no authorization in any statute and no precedent in case law." They distinguish both United States v DuBay, 17 USCMA 147, 37 CMR 411 (1967), and United States v Perez, 18 USCMA 24, 39 CMR 24 (1968), as instances where an issue had not been considered at the trial level. They view United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964), and United States v Thomas, 13 USCMA 163, 32 CMR 163 (1962), as similar examples, for in these two cases denial of speedy trial and mental responsibility were raised for the first time on appeal. The Court of Military Review applied a procedural device that permitted the Government a second opportunity "to perfect a case which was not perfected at trial," appellate defense counsel assert.

[1] During this period boards of review were redesignated Courts of Military Review.

We believe these contentions construe too narrowly the scope of the cited cases. The Court's note in *DuBay* of dissatisfaction with settling issues "on the basis of *ex parte* affidavits," was followed by its inability to dispose of an issue in *Perez* concerning counsel that was raised and contested by affidavit. The views expressed in *Perez* were hardly intended to set the limits of a Court of Military Review's power, however. Opposing counsel normally air and resolve issues at █ the trial level. When they fail to do so on interlocutory matters, Courts of Military Review should not be denied the opportunity to seek additional evidence in order that they might make an informed decision. This is the substance of the holdings in both *DuBay* and *Perez*. Consequences may vary; they were unfavorable for Ray but beneficial to other defendants, DuBay, for example. The procedure is not unlike the one that this Court used in United States v Hart, 17 USCMA 524, 38 CMR 322 (1968), rehearing, 19 USCMA 438, 42 CMR 40 (1970).

There is a precedent in the proceedings of courts established under Article III of the Constitution. In Hanrahan v United States, 348 F2d 363 (CA DC Cir) (1965), three District of Columbia residents had been indicted and arraigned in Puerto Rico for fraudulent use of the mail. Before trial, however, they successfully moved for a change of venue on the ground that pretrial publicity against them made a fair trial impossible and that trial in Puerto Rico placed them at a disadvantage in perfecting their defense. They were later arraigned in the District of Columbia. Despite repeated assertions by the defendants of their right to a speedy trial, several continuances were granted the Government. The defendants were convicted almost four years after being charged.

On appeal, the original record was remanded to the trial court for further proceedings on the speedy trial issue because two questions were unanswered at the trial level. One concerned the exercise of discretion in bringing the prosecution in Puerto Rico, the other the exercise of reasonable diligence in seeking the second indictment. On remand, the judge that presided at the original trial heard the testimony of numerous witnesses, accepted in evidence many exhibits, and at the conclusion of the hearing found that the defendants had not been deprived of their Sixth Amendment right to a speedy trial. United States v Hanrahan, 255 F Supp 957 (DC DC) (1966). The convictions of Hanrahan and his companions were subsequently affirmed on appeal. Tynan v United States, 376 F2d 761 (CA DC Cir) (1967), certiorari denied, 389 US 845, 19 L Ed 2d 111, 88 S Ct 95 (1967). See also Duncan v United States, 379 F2d 148 (CA DC Cir) (1967), and United States v York, 426 F2d 1191 (CA DC Cir) (1969).

These considerations cause us to conclude that the board of review acted within the scope of its authority when it ordered the post-trial hearing. We therefore turn to the remaining issue.

The marihuana and dexedrine offenses were committed in January and February 1968. From the chronology of events set out in the board of review's original order it appears that an investigation of these matters was requested by the Commanding Officer of the Naval Air Station Oceana on February 23, 1968. The inquiry was completed and received by that officer on May 13. The same day an Article 32 investigating officer was appointed. He completed his duties on June 18. On June 25, Ray went absent without leave but was apprehended in Poughkeepsie, New York, on June 29, and afterward he was confined at several naval installations, finally at the Norfolk Naval Station on July 10. Two days later the case was remanded for further Article 32 investigation. On July 23 the investigating officer was ordered to proceed anew. The next day Ray was informed of pending charges. By August 1, 1968, this Article 32 investigation was completed. It was endorsed to higher headquarters on the 12th and 17th of September. Staff judge advocate pretrial advice was completed Oc-

tober 19, with the charges being referred to trial four days later. The petitioner's pretrial agreement was executed November 5, and trial began November 12.

The desire for more evidence centered on three specific periods:

1. The delay from the accused's return to the Naval Air Station, Oceana, Virginia, on July 10, 1968, until he was informed of the charges on July 24, 1968.

2. The completion of the second Article 32 investigation on August 1, 1968, which was not forwarded to the General Court-Martial Convening Authority by the Commanding Officer, Naval Air Station Oceana, until September 12, 1968.

3. The period from September 17, 1968, when the Commander, Fleet Air Norfolk, Virginia, forwarded the record of the General Court-Martial Convening Authority, until the charges were referred for trial on October 23, 1968.

A chronicled, evaluated summary of the post-trial evidence was considered by the United States Navy Court of Military Review. This summary showed that during the period July 10–24, Ray was aware of the nature of both the original and amended charges. A reading of the original charges was waived during the Article 32 investigation. Counsel was given copies of new recommended charges at some time in June 1968, well before July 10. The remaining charge was his June 25 absence that was first charged as desertion.

The time from August 1 to September 12, 1968, the second period of concern, was taken up with the " 'transcription, collation, assembly, indexing, [and] reproduction' " of the second Article 32 investigation. Completion of this task was hindered by a limited office staff and by a lack of transcribing machines. The finished product included forty-four pages transcribed from the first pretrial investigation, with its twenty-two exhibits, and two hundred seventy-six additional pages. The second hearing added many exhibits and enclosures.

During the third period, September 17 to October 23, 1968, this report, with fifteen copies of each page, was received at headquarters, where the pages were assembled for review. Pretrial advice was prepared after a period of review. The record was then sent to the convening authority on October 19, and he referred the charges to trial four days later.

The Court of Military Review ruled that accountability under Article 10, Uniform Code of Military Justice, 10 USC § 810, began at the time of Ray's confinement on June 29, 1968, following his apprehension in Poughkeepsie, New York. Until then he had not been under restraint. The Court of Military Review was satisfied that Ray was aware of the charges previously investigated and that he knew he would have to answer for his unlawful flight. Conceding the existence of some periods of inactivity, the Court of Military Review nonetheless concluded that the case was prosecuted with a reasonable degree of diligence.

Considering all the circumstances, we cannot say that the Court of Military Review resolved the issue in an arbitrary or capricious manner. United States v Brown, 13 USCMA 11, 32 CMR 11 (1962); United States v Tibbs, 15 USCMA 350, 35 CMR 322 (1965); and United States v Wheatley, 10 USCMA 537, 28 CMR 103 (1959). Accordingly, we affirm the decision of the United States Navy Court of Military Review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

It seems incredible that twenty years after the passage of the Uniform Code of Military Justice, those responsible for judicial proceedings at the trial level continue to ignore the express mandates of the Congress of the United States as contained in Articles 10 and 33, Code, supra, 10 USC §§ 810 and 833.[1] Because the Congress was

---

[1] "Art. 10. Restraint of persons charged with offenses.

"Any person subject to this chapter

**335**

gravely and rightfully concerned with the question of speedy trial, based on its knowledge of and experience with courts-martial conducted during World War II, the drafters of the Code inserted a new provision, Article 98, 10 USC § 898,[2] designed to accomplish the desired purpose. When Article 10 was under consideration by the Congressional Subcommittee which considered the Code, a question was raised by a member of the Subcommittee relative to the length of time a man may be placed in confinement and held there pending his trial. During the discussion which followed, Mr. Felix Larkin, Assistant General Counsel, Office of the Secretary of Defense, a member of the group which drafted the Code, remarked:

". . . I also draw your attention to article 33, which attempts to make a flexible time limit, where we set an 8-day time period is provided, wherein the article requires the commanding officer in general court-martial cases to forward the charges he has received against a man to the next higher echelon.

"We put in there 'if practicable' to take care of the exigencies which may not make it practicable, *but if he does not do it as you see he must report the reasons why he does not.*

"So I think the combination of 33 and 98 is pretty good assurance that the cases will be speedily processed. And as I said before, there is great desirability in that. But you have to be careful in not going too far and process the cases so speedily that the accused does not have a chance to prepare his defense. I think it is a pretty good balance, the way it is provided." [Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, page 908.] [Emphasis supplied.]

Despite the number of cases we have found necessary to reverse for lack of speedy trial, all of which necessitated the extraordinary remedy of dismissal of the charges because of the nature of the error (United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969), and cases cited at page 504; cf. United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964)), I have yet to learn of a single instance wherein the sanctions of Article 98 have been involved. Its enactment has not resulted in the anticipated objective and, to all intents and purposes, appears to have been an exercise in futility.

When this case was originally before the board of review,[3] the members of the board recognized that the precise question had already been decided by another panel but, despite the doctrines of *stare decisis* and equal treatment of appeals presenting the same issue at

---

charged with an offense under this chapter shall be ordered into arrest or confinement, as circumstances may require; but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, *immediate steps* shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." [Emphasis supplied.]

"Art. 33. Forwarding of charges.

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercis-

**336**

ing general court-martial jurisdiction. *If that is not practicable, he shall report in writing to that officer the reasons for delay."* [Emphasis supplied.]

[2] "Art. 98. Noncompliance with procedural rules.

"Any person subject to this chapter who—

(1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or

(2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused;

shall be punished as a court-martial may direct."

[3] During this period boards of review were redesignated Courts of Military Review.

the same time (Brant v United States, 19 USCMA 493, 42 CMR 95 (1970)), it refused to accord that decision the status it deserved. In the board's opinion, the following is noted:

"Ray's case and the case of his co-actor, Electronics Technician N (Communications) Third Class James E. Barnet, U. S. Navy, were apparently processed together until the trial stage. They were charged with the same offenses; the offenses with which they were charged were investigated at the same times by the same investigating officers and the chronologies in the two cases are identical except that Ray was tried on 12–13 November 1968 and Barnet was tried on 14–15 November 1968.

"Our disposition of the speedy trial issue in the instant case is considerably complicated by the fact that the majority of our learned brothers on another Board of Review resolved the speedy trial issue adversely to the government and ordered the charges against Barnet dismissed. *United States v Barnet*, NCM 69 0588, decided 26 May 1969. (Opinion by Judge Timblin in which Judge Hendry concurred separately. Judge O'Malley filed a strong dissent.)

"Faced with the well reasoned majority and dissenting opinions in *United States v Barnet*, supra, the one severely and irreparably penalizing the government and the other conceivably permitting the accused to be deprived of some right guaranteed by the Code or the Constitution, we are inclined to seek some tenable middle ground."

In its effort to find a "middle ground," the board of review requested additional data on an issue which had already been lengthily adjudicated by the parties at the trial level. Upon viewing this evidence, the now Court of Military Review held:

". . . While the record portrays something less than 'constant motion,' we are satisfied that the government proceeded to trial with 'reasonable diligence.' *United States v Tibbs,*

. . . [15 USCMA 350, 35 CMR 322 (1965)]; Cf. *United States v Barnet*, NCM 69 0588, decided 26 May 1969. It follows that we find no prejudice to the substantial rights of the accused and, therefore, reject the first assignment of error."

I dissented in United States v Tibbs, 15 USCMA 350, 35 CMR 322 (1965), and do so here for the reasons set forth in my separate opinion in that case. While in *Tibbs* I would have remanded the case for a further inquiry into the causes for the violations of Articles 10 and 33 of the Code, shown *prima facie* on that record, my proposed action in that case was premised on the fact that although the issue of speedy trial was raised before the law officer, the Government presented *no* information on the issue—trial counsel had not anticipated the question and was unprepared. Cf. United States v Schalck, supra. Where, as here, the issue was fully litigated, I do not believe that further inquiry is appropriate. It hardly seems likely that, given these same circumstances, the defense would be allowed to reopen and to supplement its evidence on the issue.

But even were I to believe otherwise as to the need for additional inquiry, I believe that this accused was denied his right to a speedy trial, as provided in Articles 10 and 33, Code, supra, and the Sixth Amendment to the Constitution, and that reversal and dismissal of the charges is required. United States v Barnet, No. 69 0588 (NBR May 26, 1969), and United States v Keaton, supra. See also United States v Weisenmuller, 17 USCMA 636, 38 CMR 434 (1968), for discussion and additional citation of authority. The following chronology was established by the Court of Military Review on the basis of its request for additional information:

"Jan & Feb 68
Alleged marijuana and dexedrine offenses

13 May 68
NISO investigation received by NAS, Oceana

13 May 68
LCDR CORBITT appointed to conduct Article 32 investigation

18 June 68
LCDR CORBITT completes his investigation

19 June 68
CO, NAS, Oceana endorses Article 32 investigation

25 June 68
Accused goes UA

29 June 68
Accused apprehended, Poughkeepsie, New York

29 June 68–3 July 68
Accused confined, Naval Station, Brooklyn

1 July 68
Commander, Fleet Air, Norfolk, endorses investigation, forwards it to Commandant, Fifth Naval District

3 July 68–9 July 68
Accused confined Naval Station, Norfolk

10 July 68
Accused confined NAS Oceana

10 July 68
Accused confined NAVSTA, Norfolk

12 July 68
Article 32 investigation returned to CO, NAS, Oceana, for further investigation, and because Article 33 was not complied with

23 July 68
CDR KENNEY, JAGC, USNR, ordered to conduct new Article 32 investigation

24 July 68
Accused informed of charges against him

1 Aug 68
CDR KENNEY completes investigation and submits his report, signs charge sheet which was eventually referred to trial

21 Aug 68
LT NICHOLS, RAY's defense counsel requested release from pre-trial confinement. Request denied

12 Sep 68
CO, NAS, Oceana, endorses investigation and forwards it to Comfair Norfolk

17 Sep 68
Comfair Norfolk forwards investigation and charge sheet to Commandant, Fifth Naval District, with recommendation for GCM

10 Oct 68
LT NICHOLS repeats requests for release from pre-trial confinement. Request denied

19 Oct 68
Staff Judge Advocate, Fifth Naval District, completes pre-trial advice and forwards investigation, charge sheet, and advice to Commandant, Fifth Naval District

23 Oct 68
Charges referred to trial

5 Nov 68
Pre-trial agreement executed

12 Nov 68–13 Nov 68
Dates of trial."

The accused was under no restraint until June 29, 1968, when he was confined at the Naval Station, Brooklyn, New York. He remained in confinement until his trial on November 12 and 13, 1968, a period of one hundred thirty-seven days, despite two requests for his release by defense counsel. United States v Keaton, supra. This is the period of time chargeable to the Government. The previous Article 32 investigation was not returned until July 12th and a new investigation was found necessary "because Article 33 was not complied with" in connection with the previous investigation. It was not ordered for eleven more days (July 23d) and although completed on August 1st, it was not forwarded to higher authority until September 12th (fifty-one days). The explanation that lack of equipment and manpower was responsible for the delay is hardly attributable to the accused. The locality of this activity was not a far-flung outpost or a zone of combat operations, and if additional assistance was needed it could have been easily requested from the nearby naval facility at Norfolk.

Military due process (United States v Schalck, supra) should not depend upon the assignment of clerical personnel or equipment. The delay between September 12th and October 23d when charges were referred to trial is also, in my opinion, not satisfactorily explained by the allegation that additional physical work had to be done to properly prepare the investigative report for review and by the complexity of the matters involved in the charges and specifications.

Since I agree with the board of review in United States v Barnet, supra, that the Government failed to carry its burden of proof to establish that the prosecution in this case proceeded with reasonable dispatch, as required by Articles 10 and 33, Code, supra, I would hold that the accused was denied his right to a speedy trial. I would reverse the decision of the Court of Military Review and order the Charges and their specifications dismissed.