# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Conor H. McLEOD,
### Operations Specialist Third Class (E-4), U.S. Coast Guard

## CGCMG 0214

## Docket No. 1262

## 29 August 2008

General Court-Martial convened by Commander, First Coast Guard District. Tried at Boston, Massachusetts, on 8 December 2005.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Bowen C. Spievak, USCGR |
| Assistant Trial Counsel: | LT Russell E. Bowman, USCG |
| Defense Counsel: | LT Sean M. Sullivan, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Donna D. Leoce, USCG |
| | LCDR Patrick M. Flynn, USCG |

## BEFORE
## McCLELLAND, TUCHER & PEPPER
### Appellate Military Judges

TUCHER, Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of sodomy with a child under the age of sixteen, in violation of Article 125, Uniform Code of Military Justice (UCMJ); and one specification of committing indecent acts with another, in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for three months, total forfeitures, reduction to E-1, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged. The pretrial agreement had no effect on the sentence.

Before this Court, Appellant assigned two errors:

I. Appellant's plea to an indecent act is improvident because the military judge failed to elicit facts sufficient to show that the act occurred in an open and notorious manner and no other factors are present to show that the act was indecent, the fact that the act was committed in a chapel by itself being insufficient to support a finding that the act was indecent.

II. Appellant was denied conflict-free counsel when he notified the Government of a conflict with his attorney and wanted a new attorney and when no new attorney was detailed to represent him.

We reject both assignments and affirm.

Appellant was convicted under Article 134, UCMJ, of committing an indecent act with SR, a 15-year-old Coast Guard dependent. Appellant initially was charged with indecent acts with a child, but pleaded guilty to the offense of indecent acts with another by excepting out the reference to SR's age. (R. at 11.) Appellant was found guilty of the specification as excepted. (R. at 92.) In his first assignment, Appellant now argues that his plea to committing an indecent act with another was improvident because the military judge failed to elicit facts that the act was either conducted in an open and notorious manner or indecent in some other way.

Appellant was a student at OS "A" School at Training Center Petaluma. SR was the stepson of a Training Center instructor. (Prosecution Ex. 1 at 2.) After being introduced through a mutual friend, Appellant and SR agreed to meet each other at the base chapel on 9 July 2003 at night. (Prosecution Ex. 1 at 2; R. at 22-23.) During the providence inquiry, Appellant explained that he agreed to the location because he knew it would be open, and because he "was under the impression that there would be no one else there as well." (R. at 60.) After meeting, Appellant and SR engaged in extended conversation, and remained in the chapel through the early morning hours of 10 July. Toward the end of their meeting, SR initiated a kiss. Appellant stated that he did not respond. (R. at 54.) SR began fondling Appellant's penis and then removed it from his pants. (R. at 64-65.) The two then engaged in sodomy, which became the subject of a second offense under Article 125, UCMJ. Appellant and SR left the chapel between 0330 and 0400. (R. at 49.)

Appellant's guilty plea may be overturned on appellate review only when the record of trial shows a substantial basis in law and fact for questioning the plea. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

An Article 134, UCMJ, offense of indecent acts has three elements: (1) the accused committed a certain wrongful act with a certain person; (2) the act was indecent; and (3) under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Manual for Courts-Martial (MCM), Pt. IV, ¶ 90.b., United States (2005 ed.). "'Indecent' signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." MCM, Pt. IV, ¶ 90.c. "The determination of whether an act is indecent requires examination of all the circumstances, including the age of the victim, . . . the relationship of the parties, and the location of the intended act." *United States v. Rollins*, 61 M.J. 338, 344 (C.A.A.F. 2005). Our superior court has recognized that private, heterosexual relations not amounting to sodomy between consenting adults ordinarily will fall outside the description of indecent conduct, unless other facts are established that may cause such acts to be indecent. *United States v. Stocks*, 35 M.J. 366, 367 (C.M.A. 1992); *see also United States v. Frazier*, 51 M.J. 501, 503-05 (C.G.Ct.Crim.App. 1999). The offense of committing indecent acts with another also requires that the acts be done "'in conjunction or participating with another person,'" as opposed to merely acting in another person's presence. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996) (*quoting United States v. Thomas*, 25 M.J. 75, 76 (C.M.A. 1987)).

"An act that may not be indecent between consenting adults may well be made indecent because it is between an adult and a child." *United States v. Strode*, 43 M.J. 29, 32 (C.A.A.F. 1995). Citing our earlier decision in *United States v. Frazier*, Appellant argues that the fact that SR was under the age of sixteen could not be used to show the indecency of what otherwise would have been noncriminal sexual behavior.[1] (Reply Br. 3.) Accordingly, Appellant

---

[1] At trial, Appellant repeatedly maintained that at the time of the act, he believed SR to be seventeen years old. In a stipulation of expected testimony admitted during the Government's sentencing case, SR asserted that while in the chapel, he had informed Appellant that he was fifteen years old and that he was a freshman in high school.

maintains that his plea to indecent acts was improvident. *See United States v. Zachary*, 61 M.J. 813, 825-26 (A.Ct.Crim.App. 2005) (holding that mistake of fact as to age is a defense to indecent acts with a child), *aff'd*, 63 M.J. 438 (C.A.A.F. 2006). We agree that indecency cannot be based on SR's age in this case.

Even when consensual sexual behavior is not inherently indecent, it may still be punishable under Article 134, UCMJ, when committed in an "open and notorious" manner. *United States v. Sims*, 57 M.J. 419, 421 (C.A.A.F. 2002). An "open and notorious" sexual act includes sexual behavior that occurs under circumstances where there is a substantial or reasonable risk that the act could be witnessed by a third person, despite the fact that no such discovery occurred. *Id.* at 421; *Frazier*, 51 M.J. at 503. The Government offers that Appellant's conduct was open and notorious because the chapel was a public place of worship that was available to Coast Guard personnel, retirees, dependents, and family members for "prayer, contemplation, and spirituality." (R. at 24, 33, 66.) The Government points out that Appellant admitted that the chapel remained unlocked, and that a person could have entered the chapel and observed the sexual encounter. (R. at 66.)

Our superior court elaborated on the concept of "open and notorious" conduct in *United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F. 1999), and *United States v. Sims*, 57 M.J. 419, 421-22 (C.A.A.F. 2002). In *Izquierdo*, the Court of Appeals for the Armed Forces (CAAF) upheld an accused's conviction for committing indecent acts, where the accused had sexual intercourse with a woman in his barracks room while his two roommates were in the same room, and where their view was obstructed by a hanging sheet. 51 M.J. at 423. In the same case, however, CAAF overturned a second conviction for indecent acts with another where the accused had sexual intercourse in a shared barracks room, but where the door was closed and unlocked and there was no evidence to suggest any other person was present. *Id.* In *Sims*, CAAF overturned a guilty plea conviction for indecent acts with another where an accused fondled a woman's breast in a private bedroom. At the time of the offense, there was no lock on the door, and the accused was hosting a party with thirty to forty guests. *Sims*, 57 M.J. at 420.

---

(Prosecution Ex. 2.) In 1996, Congress included an explicit mistake of fact defense as to age in Article 120, UCMJ, but did not provide one in Article 125, UCMJ. MCM, App. 23 at A23-14. Appellant's mistaken belief as to SR's age was not a defense to sodomy. *United States v. Wilson*, 66 M.J. 39, 40 (C.A.A.F. 2008).

CAAF's decisions in *Izquierdo* and *Sims* placed significant weight on the accuseds' legitimate privacy interests in the location of the charged acts – in one case, a private bedroom, and in the other, a shared barracks room.  The instant case involves sexual conduct that occurred in a military chapel – a public building on a military installation that provides unrestricted access to military members, retirees, and their families.  Although Appellant and SR may have chosen the chapel to avoid detection, we note that a public chapel is not a place intended for intimate sexual activity, and we decline to find that Appellant had any reasonable expectation of privacy in his sexual relations with SR in this particular venue.  Here, the record establishes that the chapel was unlocked so as to provide continuing access at all hours of the day and night for worship, prayer, and meditation.  In addition, Appellant admitted that a person could have entered the chapel and observed the sexual encounter.  (R. at 66.)  We find this record sufficient to establish a substantial or reasonable risk that the charged act could have been witnessed by a third person, even if no such discovery actually occurred.  *Compare Sims*, 57 M.J. at 422.[2]

Even assuming that the charged act was not open and notorious, we are satisfied that the record adequately establishes that Appellant engaged in conduct that was grossly vulgar, obscene, and repugnant to common propriety, and therefore was indecent as that term is defined under Article 134, UCMJ.  Here, Appellant admitted that he was attracted to and aroused by SR, the stepson of a Coast Guard instructor, while the two sat and talked together at night at the base chapel.  Appellant admitted that after several hours of talking, he and SR engaged in kissing and fondling.  Appellant admitted that SR initially fondled his penis through his pants, and then removed his penis and continued to stroke it.  (R. at 64-65.)  We find it significant that Appellant's acts were preparatory to his engaging in the ultimate criminal sexual act involving homosexual sodomy with a child under the age of sixteen.  *Cf. United States v. Stocks*, 35 M.J. 366, 367 (C.M.A. 1992) (holding that private, heterosexual foreplay between consenting adults is not unlawful, provided the ultimate act of sexual intercourse is not criminal).  We also find it significant that the record establishes Appellant's awareness that his prohibited act occurred in a

---

[2] Our holding is not inconsistent with our earlier decision in *United States v. Frazier*, 51 M.J. 501, 504-05 (C.G.Ct.Crim.App. 1999).  In *Frazier*, a contested members case, we set aside a conviction for indecent acts where the record of trial contained no evidence of risk of observation by others, where the consensual acts occurred late at night in a parking lot and in a barracks room.  In this instant matter, Appellant pleaded guilty and, during the providence inquiry, admitted circumstances that raised at least a reasonable probability that others might have observed Appellant's intimate acts with SR.

place designated for spiritual worship, meditation, and contemplation. (R. at 33, 36-37, 66.) In particular, during the military judge's inquiry Appellant asserted that his acts with SR in the chapel were depraved, in that they undermined the holy and sacred activities usually performed in the chapel. (R. at 37.) Given this record, we decline to find a substantial basis in law or fact upon which to question the providence of his guilty plea. Appellant's first assignment is rejected.

In his second error assignment, Appellant argues that he was denied conflict-free assistance of counsel when he notified the Government of his dissatisfaction with his attorney and no new attorney was appointed to represent him. In support of this assignment, Appellant submitted an affidavit detailing his dissatisfaction with his detailed defense counsel. Appellant's affidavit generally describes his dissatisfaction over defense strategy and his counsel's recommendation that he plead guilty, complains of inadequate attention being given his case, and decries his counsel's insensitive comments directed towards him. Appellant states that he became so dissatisfied with his defense counsel that about a week and a half before trial, with his Executive Officer's assistance, he contacted the Staff Judge Advocate's (SJA's) office at the First Coast Guard District to discuss his desire for substitute counsel. Appellant indicates that after being informed by the unidentified speaker that his defense counsel was an "excellent" attorney and that any substitute counsel would not have nearly as much time to prepare an adequate defense, he reluctantly concluded that he "had no other choice" but to keep his detailed defense counsel as his attorney, "even though I really didn't care to have him represent me." Appellant complains that he "was TOLD, not advised by the prosecution" that he should keep the attorney he had been assigned.[3] (App. A at 3.) The record also reveals that less than a week before trial, Appellant signed a pretrial agreement with the advice and assistance of defense counsel.[4] On 8 December 2005, in accordance with his pretrial agreement, Appellant pleaded guilty at trial.

---

[3] In Coast Guard courts-martial, the trial counsel ordinarily is a military attorney who works for the SJA, either directly or through a department head.

[4] Although the Government was unsuccessful in identifying the individual in the SJA's office who allegedly had spoken with Appellant and his Executive Officer, the SJA filed with this Court an affidavit acknowledging that he spoke with Appellant's Commanding Officer concerning Appellant's dissatisfaction with his counsel, and that they discussed the procedures for requesting the appointment of individual military counsel. While we understand that the discussions between the SJA and the Commanding Officer may only have been exploratory in nature, government attorneys have a professional responsibility to take immediate steps to notify appointed counsel of the

On 19 September 2007, this Court issued an order directing the Government to produce affidavits from Appellant's defense counsel, as well as from persons assigned to Appellant's command and the SJA's office with knowledge of Appellant's desire for appointment of substitute counsel. On 18 January 2008, the Government filed with this Court, *inter alia*, an affidavit from Appellant's trial defense counsel, acknowledging a period of crisis in the attorney-client relationship, but presenting a more detailed explanation of Appellant's decision to continue with him as counsel. In support of his affidavit, defense counsel submitted three emails sent to him from an email address containing Appellant's name. In an email to defense counsel dated 5 December 2005, Appellant acknowledged their disagreement, apologized for his behavior, expressed confidence in defense counsel's representation, and indicated that he did not wish to replace him. In emails to defense counsel dated 24 June 2005 and 28 March 2006, Appellant commended his counsel for his superior legal skills and expressed his satisfaction with the representation he had received. The June 2005 email precedes and the March 2006 email follows the time period that Appellant asserts the attorney-client relationship was in crisis.

The Sixth Amendment guarantee of the right to effective assistance of counsel includes the right to conflict-free counsel. *United States v. McClain*, 50 M.J. 483, 487 (C.A.A.F. 1999). The detailing of substitute counsel to address an attorney-client conflict was most recently addressed by CAAF in *United States v. Lindsey*, 48 M.J. 93 (C.A.A.F. 1998), and more recently by this Court in *United States v. Brown*, 52 M.J. 724 (C.G.Ct.Crim.App. 2000). In *Brown*, we set out the framework for evaluating the denial of substitute representation by quoting from *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992):

> "To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel." *U.S. v. Sayers*, 919 F.2d 1321, 1323 (8th Cir. 1990). Justifiable dissatisfaction sufficient to merit substitution of counsel includes "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991).

52 M.J. at 726.

---

situation when they become aware of a potential conflict or demand for substitute counsel. *United States v. Cornelious*, 41 M.J. 397, 398 (C.A.A.F. 1995); *United States v. Carter*, 40 M.J. 102, 105 (C.M.A. 1994); ABA Model Rule of Professional Conduct 1.16. This the Government failed to do. (LT Sullivan Aff. ¶ 4.)

Article 66(c), UCMJ, generally does not confer authority on service Courts of Criminal Appeals to resolve genuine disputes that arise between post-trial submissions and the record of trial. *United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997). There are narrow exceptions to this rule. A post-trial evidentiary hearing under *United States v. DuBay*, 17 USCMA 147, 37 C.M.R. 411 (1967), is not required "where all the evidence before the factfinder 'compellingly demonstrate[s] an accuracy of recollection by one as opposed to the other . . . .'" *Ginn*, 47 M.J. at 244 (*quoting United States v. Perez*, 18 USCMA 24, 26, 39 C.M.R. 24, 26 (1968)). Moreover, in a guilty plea case raising an ineffective assistance claim, an evidentiary hearing need not be ordered if an appellate court can conclude that "'the motion and the files and records of the case . . . conclusively show that [an appellant] is entitled to no relief.'" *Id.* (*quoting United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986)). In this regard, a post-trial evidentiary hearing is not required where "the facts alleged in the affidavit allege an error that would not result in relief if any factual dispute were resolved in appellant's favor." *Id.* at 248.

Although Appellant's affidavit does not clearly identify the basis for his entitlement to substitute counsel, we treat his submission as an allegation of a complete breakdown in the attorney-client relationship.[5] Based on our thorough review of the motions, post-trial submissions, and record of trial, we find that Appellant is not entitled to relief.

Here, the post-trial submissions agree that there was a period of crisis in the attorney-client relationship prior to trial. Defense counsel's affidavit concedes the crisis but submits that it was repaired prior to Appellant's trial and his decision to plead guilty under the pretrial agreement. We note that defense counsel's explanation finds support in the record of trial, which reveals no hint of Appellant's professed dissatisfaction with his attorney. During the providence inquiry, for example, Appellant specifically indicated that he was satisfied with defense counsel's performance and that he wished to be represented by him at trial. (R. at 4, 74.) Appellant informed the military judge that he was pleading guilty voluntarily and that he had not been forced or coerced into entering the pretrial agreement. (R. at 74, 88.) Appellant also

---

[5] Although Appellant's assignment of error alleges an attorney conflict, we find no basis to conclude that an actual conflict of interest affected defense counsel's performance, abridging Appellant's Sixth Amendment right to counsel.

informed the military judge that he had had sufficient time to discuss his case with his attorney. (R. at 90.)

Although Appellant's affidavit goes to considerable lengths to detail his early dissatisfaction with his counsel, we find it significant that he does not deny that the crisis in their relationship was repaired prior to the time he entered into the pretrial agreement, and prior to trial. Appellant's affidavit does offer that he believed he had "no choice" but to continue with his detailed defense counsel, and that he "didn't care" to have his detailed defense counsel represent him. Appellant's position, couched in the language of a tentative misgiving, is wholly inadequate to raise a genuine conflict in evidence that warrants a post-trial evidentiary hearing. Nor does it describe justifiable dissatisfaction warranting appointment of substitute counsel. There simply is nothing in the record or Appellant's post-trial submissions to suggest that there was a complete breakdown in communications between Appellant and his counsel, either before, during, or after trial, so as to deny him his Sixth Amendment right to effective assistance of counsel. *See Lindsey*, 48 M.J. at 98.

The Sixth Amendment guarantees the assistance of competent counsel; it does not guarantee the right to a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). An accused's loss of trust or confidence in his attorney, absent a legitimate reason, is insufficient cause to warrant assignment of substitute counsel. *See United States v. Allen*, 789 F.2d 90, 93 (1st Cir. 1986), *cert. denied*, 479 U.S. 846 (1986). Moreover, heated disagreements over trial tactics and defense strategy, or even a personality conflict between counsel and client, will not impair the right to effective representation in the absence of a genuine conflict or breakdown that is incapable of resolution. *Lindsey*, 48 M.J. at 98. Here, Appellant's account of his disagreement with his attorney describes little more than an evolving process of discussion and accommodation where both parties endeavored to reach a mutual understanding on case strategy prior to trial. Appellant's belief that he had "no choice" but to continue with defense counsel may reflect his compromise with his own doubts regarding his attorney's advice and his decision to plead guilty, but it does not describe the kind of breakdown in the attorney-client relationship that would contravene the Sixth Amendment right to counsel.

Moreover, we are satisfied that defense counsel was aware of the crisis and took positive steps to address his client's dissatisfaction prior to trial and Appellant's decision to plead guilty.

Finally, Appellant has failed to show that the claimed breakdown in the attorney-client relationship affected his pleas, i.e., but for the breakdown in the attorney-client relationship, there would have been a "reasonable probability that . . . [Appellant] would not have pleaded guilty and would have insisted on going to trial." *Ginn*, 47 M.J. at 247. In addition, Appellant has not alleged, nor do we find any reason to believe, that the strained relationship with his attorney adversely affected his trial interests by denying him effective representation. We note that Appellant originally was charged with sodomy and indecent acts with a child under the age of sixteen, on divers occasions, for which he faced a maximum of thirty years' confinement and a dishonorable discharge. Under the terms of the plea agreement negotiated by his defense counsel, SR pleaded guilty by exceptions and substitutions to only one act each of sodomy with a child under the age of sixteen and indecent acts. In addition, the military judge sentenced Appellant to only three months' confinement, well under the 5-month sentence limitation agreed to by the parties, as well as the fifteen months requested by trial counsel. We find that appointed defense counsel provided Appellant with vigorous and effective representation throughout these trial proceedings. Appellant's second assignment is without merit and is rejected.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge PEPPER concur.



For the Court,

Jane R. Lee
Clerk of the Court

10