**UNITED STATES, Appellee**

v.

**Earl E. FLUELLEN, Jr., Private First Class, U.S. Army, Appellant.**

No. 93–0418.
CMR No. 9102035.

U.S. Court of Military Appeals.

Argued March 1, 1994.

Decided Aug. 17, 1994.

For Appellant: *Captain Don F. Pollack* (argued); *Colonel Malcolm H. Squires, Jr., Captain Robin N. Swope, Captain Clayton R. Diedrichs* (on brief); *Colonel Stephen D. Smith* and *Major Robin L. Hall.*

For Appellee: *Captain Robert W. Clark* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Major Kenneth T. Grant* (on brief); *Captain Gregory T. Baldwin.*

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officers and enlisted members of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922. The convening authority approved the sentence of a bad conduct discharge, 6 months' confinement,

partial forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion, 38 M.J. 184. We granted review of the following issue:

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE CIVILIAN DEFENSE COUNSEL FAILED TO CONTACT AND CALL WITNESSES THAT WOULD HAVE PROVIDED AN ALIBI DEFENSE FOR APPELLANT AND CORROBORATED HIS TESTIMONY.

We hold that appellant was not denied the effective assistance of counsel because civilian defense counsel weighed the pros and cons of calling the witnesses and made a valid tactical decision in determining not to call either witness.

## FACTS

On March 28, 1991, between 10:00 and 11:00 p.m., the victim, Mr. Robert Bollig, a German national, was walking to a friend's house when he was confronted by two males. One of the assailants wore a distinctive black and white jacket and the other wore lighter but still distinctive clothing. The two assailants passed by him several times which drew his attention to their actions. Later, one of the assailants, identified as appellant, approached Mr. Bollig from the rear and began repeatedly to touch the victim's side with a knife, demanding "mark, mark." Mr. Bollig immediately relented and gave ten Deutschemarks to the assailant. He recognized the assailant who was wearing a black and white jacket as the shorter and stockier of the two suspects who had passed him earlier. After the robbery, the two males fled.

The victim was able to locate the German police and explain what happened. Thereafter, the police and Mr. Bollig began searching the immediate area for individuals matching the description of the suspects. Finding no one at the nearby train station, they drove back to the vicinity of the robbery where they saw two males, appellant and Private (PVT) Reynolds, wearing the clothing described by the victim. As the car approached the two males, Mr. Bollig explained

that he was able to see their faces and exclaim, "Yes, those are the ones." The police immediately arrested appellant and PVT Reynolds. A search revealed a knife on each suspect and 6.40 Deutschemarks.

Approximately two weeks after the robbery, Mr. Bollig again identified appellant as his assailant, this time at a photographic lineup conducted by the U.S. Army Criminal Investigation Command. A joint Article 32(b), UCMJ, 10 USC § 832(b), investigation began on June 28, 1991, in which PVT Reynolds was represented by Captain Theresa M. Thompson; beginning with the next session, on July 2, 1991, appellant was represented by Mr. Andrew Colglazier.

At trial, appellant testified that he was wearing a black and white jacket and his companion, Reynolds, was wearing a blue pullover, dark denim jeans, and a jacket. They had left the military kaserne at 10:00 p.m., stopped to have a beer at a pizzeria a few minutes from the vicinity of the robbery, and were apprehended by the German police at approximately 11:30 p.m. After trial, appellant submitted an affidavit to the court below claiming his civilian defense counsel was ineffective because he failed to develop the alibi defense by contacting and calling Reynolds and the pizzeria proprietor as defense witnesses.

In response by affidavit, civilian defense counsel stated that he made a tactical decision not to call as defense witnesses either the pizzeria proprietor or PVT Reynolds. Defense counsel claimed that Reynolds had become a "more impeachable" witness because of different allegations made against him since the offense. Defense counsel also thought that the convening authority would not grant immunity to Reynolds since the defense request for two other witnesses was rejected by the military judge. As to the failure to call the pizzeria proprietor, defense counsel was concerned that his testimony would cut two ways. While the proprietor could establish that appellant and Reynolds bought a beer, he would also testify that the cost of a beer was 1.8 Deutschemarks, thereby corroborating that the change found on appellant and his friend was the exact change

one would get from 10 Deutschemarks. Additionally, the pizzeria was close to the scene of the crime which would support an allegation that there was time to commit the robbery and to obtain a beer at the pizzeria.

## DISCUSSION

■ Under both the Sixth Amendment to the Constitution and Article 27, UCMJ, 10 USC § 827, a military accused is guaranteed the effective assistance of counsel at the pretrial stage. *See, e.g., United States v. Scott,* 24 MJ 186 (CMA 1987) (failure to investigate alibi until 5 months after the allegation resulted in a finding of ineffective counsel). A military accused is also guaranteed the effective assistance of counsel at trial[1] and post-trial. *See, e.g., United States v. Spurlin,* 33 MJ 443 (CMA 1991).

■ In order for appellant to prevail on a claim of ineffective assistance, he must show both (1) that his attorney's representation was unreasonable "under prevailing professional norms" and (2) that, as a result of the deficiency, appellant was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 2064–65, 2067 (1984). As to the competence prong the Supreme Court recognized in *Strickland* that there is a presumption of competence. Actions by counsel that "might be considered sound trial strategy" will not result in showing unreasonable conduct. *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Effective counsel will contact potential witnesses to determine the facts, not necessarily the facts admissible in evidence, but all the facts. *See, e.g., United States v. Scott, supra.* This can be done by talking to all potential witnesses,[2] counsel for any suspects where

there might be an indication that rights were invoked, and by visiting the scene of the crime. After a thorough investigation, counsel then must decide on a strategy for the case. It is important for counsel to evaluate all of the evidence and determine the strategy that is most likely to be successful. The alternative strategies open to Mr. Colglazier were alibi, misidentification, and failure of proof. Often, as here, these defenses can dovetail together. Thus, part of the tactical decisions for the defense in this case involved an analysis of which witnesses not to call because of their potential for impeachment and corroboration of the prosecution's case. Mr. Colglazier concluded for valid tactical reasons that he would not call either PVT Reynolds or the pizzeria proprietor as witnesses for the defense.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and GIERKE concur.

WISS, Judge (concurring):

For the reasons stated by the majority, I agree that appellant was not denied effective assistance of counsel by defense counsel's tactical decision not to call two potential defense witnesses to establish an alibi defense. Also, however, the granted issue asks whether effective assistance was denied by counsel's failure to call these witnesses in order to corroborate appellant's own testimony. The majority opinion does not address this aspect of the granted issue.

The Chief Judge, however, does discuss this alleged deficiency. Even if counsel was deficient in not interviewing the owner of the pizzeria—a conclusion of which I am not

---

1. This guarantee is jeopardized as a result of the following:

   * * *

   (8) Permitting the accused to plead guilty to an offense which either cannot be proven by the government or which is barred by the statute of limitations;
   (9) Abandoning cross-examination of key government witness;
   (10) Failure to call witnesses;
   (11) Failure to make an offer of proof;
   (12) Failure to object to adverse evidence or to present important evidence;
   (13) Failure to raise an available defense; [or]
   (14) Significant error in trial strategy or tactics[.]
   quoted from F. Gilligan and F. Lederer, *Court-Martial Procedure* § 5–55.20 at 200–01 (1991) and 23 (1993 Cum.Supp.)(footnotes omitted).

2. It is not entirely clear from this record what efforts defense counsel may have undertaken to interview PVT Reynolds. It does appear, however, that the decision not to call Reynolds as a defense witness turned on tactical considerations other than his expected testimony.

entirely convinced under the total circumstances of this case—I agree with the Chief Judge that appellant suffered no prejudice. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The critical difference between appellant's and Reynolds' trials was not presence or absence of corroborating alibi testimony; rather, it was the ability of the victim positively to identify appellant as his robber versus the inability of the victim to be similarly positive in identifying Reynolds as appellant's cohort.

SULLIVAN, Chief Judge (concurring in part and in the result):

The granted issue in this case asks:

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE CIVILIAN DEFENSE COUNSEL FAILED TO CONTACT AND CALL WITNESSES THAT WOULD HAVE PROVIDED AN ALIBI DEFENSE FOR APPELLANT AND CORROBORATED HIS TESTIMONY.

The two witnesses considered in the granted issue were the co-accused, Private Reynolds, and the owner of a pizzeria in the vicinity of the crime scene, Mr. Jannotta. They, along with appellant, subsequently testified at Private Reynolds' court-martial, where he was found not guilty of robbery. Final Brief at 4.

Defense counsel in this case submitted an affidavit concerning his conduct in this case. It states in part:

### I

Though the appellant alleges that I failed to call several witnesses, there were only two persons, alluded to by appellant, who could have provided any testimony which might have provided a shadow of an alibi: the co-accused, Roy Reynolds, and Mr. Alfonso Jannotta, the proprietor of a small pizzeria near the location of the robbery.

### A

I did not call Reynolds as a witness in appellant's trial for several reasons. The appellant's trial was held several weeks before Reynolds' trial. From the time that charges had been preferred against both accuseds, Reynolds had gotten into trouble with his chain of command on several occasions. He had become an even more impeachable witness than merely being the co-accused, and I did not expect that the trier of fact would find him credible. Also, through conversations with the Trial Counsel, Captain Michael Benjamin, I knew that he and the Staff Judge Advocate would recommend against any defense request for immunity for Reynolds. The convening authority had already refused to grant immunity to two other witnesses the defense had requested, and the military judge did not order their production. I had no reason to believe that the military judge would have made any different ruling concerning Reynolds, had I requested that he do so.

Based upon the above situation, I made a tactical decision not to pursue Reynolds as a witness because I felt it would be a waste of time and could harm our case. I also wanted to distance my client, in terms of comparison, as much as possible from Reynolds. I felt that for the panel to connect appellant with a soldier like Reynolds during off duty time could only hurt appellant.

### B

Appellant alleges that I should have called Mr. Alfonso Jannotta, the proprietor of a small pizzeria located within a few minutes' walk from the scene of the robbery. It was never an issue as to whether the appellant had been to the pizzeria that night, and it was not an issue about when the appellant was there. The issue was: when did the robbery take place, and could the time be pinpointed to create an alibi? I went to the pizzeria with appellant in the course of my investigation. Appellant did not tell me that any particular individual at the pizzeria was important: he merely stated that he had been to that particular pizzeria that night. We walked around the area together to get a feel for the area and

how much time would be necessary to go from the scene of the robbery to the pizzeria. If any witness to include Mr. Jannotta could have said that the appellant and Reynolds were there for even one-half hour, perhaps that would have been different. Appellant told me, however, that they had stopped by the pizzeria very briefly, just long enough to purchase a couple of bottles of beer.

I am of the opinion that Mr. Jannotta did not testify truthfully at Reynolds' trial. Included with this affidavit is a copy of a letter which I wrote to appellant's parents after his and Reynolds' trials were over. As stated in that letter, not long after the appellant's trial was over, his girlfriend, Anita, called me repeatedly at my home. She was extremely upset, almost hysterical. At that time, Anita was sixteen years old. She was extremely emotional, as she had proven immediately after the panel president announced the guilty finding. He passed by her in the hallway during the recess preceding the sentencing phase of the trial. She began screaming at him and had to be physically restrained from approaching him. In our telephone conversations, she asked me repeatedly what could be done to get the verdict overturned, saying that she would do *anything* to get him out of confinement no matter how she had to do it. My letter explains my fears relating to her meeting with Mr. Jannotta.

The appellant testified at Reynolds' trial, basically reiterating Reynolds' own testimony. However, when I spoke with them, the panel members informed me that they placed little or no weight on appellant's testimony. To reiterate, the panel did not feel that Mr. Jannotta's testimony was at all important, and the panel felt that the government's identification evidence was simply too weak to sustain a conviction for robbery against Reynolds.

I agree with the majority that appellant was not denied effective assistance of counsel under the Sixth Amendment because he failed to call two potential witnesses to establish the defense of alibi. Generally, the failure to call a co-accused who is later acquitted

in his own trial is not ineffective assistance of counsel. *See Lopez v. State*, 318 N.W.2d 807, 811 (Iowa App.1982). Moreover, it is not ineffective assistance of counsel to reject a potential alibi defense which is not ironclad. *See State v. Boyd*, 842 S.W.2d 899, 905 (Mo. App.1992); *Swartz v. State*, 597 N.E.2d 977, 983 (Ind.App.1992).

Nevertheless, appellant also avers that he was denied effective assistance of counsel when his lawyer failed to call two defense witnesses who would have "corroborated his testimony." At his court-martial, the victim testified that he was robbed of *a ten mark bank note* by two black men, one carrying a knife. Appellant was arrested with a second black man in the vicinity of the alleged robbery carrying a knife, two beers, and 6.4 marks in coins. Appellant testified that he and Reynolds had previously bought two beers at a pizzeria with *10 marks in coins* given to him by Reynolds. The Government, however, argued in its closing argument on findings as follows:

And besides Mr. Bollig, you have a lot of corroborating evidence,—evidence which by itself, the Government asserts, does certainly not prove this case beyond a reasonable doubt, but are good indications that this accused was involved in that robbery. He had the knife,—a knife which he told you that he would use to protect himself against this mythical Turkish enemy, and yet he didn't know whether or not the knife was even working. He had two beers and six Marks forty. *It's not a great leap of faith to know what happened with those ten Marks.* Does that by itself prove the case beyond a reasonable doubt? No, it doesn't.

(Emphasis added.)

Private Reynolds had a separate trial for his role in the robbery, and he was represented by a different counsel. This trial took place after appellant's trial, and appellant and Mr. Jannotta, the owner of the pizzeria, were called as witnesses. They both testified that appellant and Reynolds bought two beers at the pizzeria *with change in coins,* not with a 10–mark bank note. Reynolds was found not guilty of the robbery.

My initial observation on these events is that it is black letter law that acquittal of a co-accused at the same trial or different trial does not require acquittal of the accused. *See United States v. Ayers,* 924 F.2d 1468, 1483 (9th Cir.1991); *United States v. Mancari,* 875 F.2d 103, 104 (7th Cir.1989), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1320, 113 L.Ed.2d 253 (1991). It logically follows that an acquittal of a co-accused at the same or different trial does not necessarily mean that the counsel for the accused was ineffective. *See also Lomax v. Commonwealth,* 581 S.W.2d 27, 29 (Ky.App.1979). The record in this case, however, does not show that appellant's defense counsel actually interviewed the pizzeria owner to provide support for appellant's testimony that he bought the two beers with coins. *See generally State v. Aplaca,* 74 Haw. 54, 837 P.2d 1298, 1307 (1992). This was unreasonable attorney conduct which cannot be justified by post-trial speculation of the attorney concerning the truthfulness of a witness' testimony. *Id.; United States v. Scott,* 24 MJ 186 (CMA 1987).

Nevertheless, appellant must also show that this deficient attorney conduct prejudiced him at his trial. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Acquittal of the co-accused at a different court-martial where these witnesses where used to undermine the Government's corroboration theory is some evidence of this prejudice. *See People v. Tillman,* 226 Ill.App.3d 1, 168 Ill.Dec. 187, 197, 589 N.E.2d 587, 597 (1991). *See also Lahay v. Armontrout,* 974 F.2d 979, 981 n. 2 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1587, 123 L.Ed.2d 154 (1993). Nevertheless, the question of corroboration was not so important in appellant's case as in that of his co-accused. Even superficial examination of the record makes clear that in appellant's case the victim absolutely identified appellant as the principal robber. He was less sure of his identification of appellant's confederate who was acting as a look out some distance away. *See People v. Bradshaw,* 65 Ill.App.3d 76, 22 Ill.Dec. 112, 115, 382 N.E.2d 432, 435 (1978). Moreover, even without the Government's theory that the victim's testimony was corroborated by the change found on appellant, corroboration of the victim's testimony existed based on the knife found on appellant. In my view, the failure to call the pizzeria owner and the co-accused on the beer-purchase question did not prejudice appellant.