UNITED STATES, Appellee,

v.

Michael D. LINDSEY, Sergeant,
U.S. Air Force, Appellant.

No. 97–0469.
Crim.App. No. 32088.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 2, 1997.

Decided May 20, 1998.

For Appellant: *Captain Harold M. Vaught* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield* and *Captain Robert E. Watson.*

For Appellee: *Captain Tony R. Roberts* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Major LeEllen Coacher.*

### Opinion

SULLIVAN, Judge:

During June and September 1995, appellant was tried by a general court-martial composed of officer and enlisted members at Bolling Air Force Base, Washington, D.C. Contrary to his pleas, he was found guilty of rape, assault, assault consummated by a battery (3 specifications), violating a state court protective order (2 specifications), kidnapping, communicating a threat (2 specifications), and unlawful entry (2 specifications). *See* Arts. 120, 128, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 928, 930, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 48 months, partial forfeitures, and reduction to E–2. On March 26, 1996, the convening authority approved the adjudged sentence. The Court of Criminal Appeals affirmed on December 30, 1996.

On August 4, 1997, this Court granted review on the following question of law:

> WHETHER THE MILITARY JUDGE ERRED WHEN, AFTER APPELLANT MADE ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING HIS UNSWORN STATEMENT ON SENTENCING, HE ADVISED APPELLANT THAT HE COULD EITHER REPRESENT HIMSELF *PRO SE* OR CONTINUE WITH THE COUNSEL WHOM HE HAD ALLEGED WERE INEFFECTIVE, BUT FAILED TO (1) ADVISE APPELLANT THAT HE COULD REQUEST ALTERNATIVE COUNSEL, OR (2) MAKE ANY INQUIRY WHATSOEVER INTO THE OBVIOUS CONFLICT OF INTEREST WHICH HAD ARISEN.

We hold that any error committed by the military judge in failing to completely advise appellant of his right to counsel during his sentencing hearing was harmless. *United States v. Armstrong,* 112 F.3d 342, 345 (8th Cir.1997); *see United States v. Swinney,* 970 F.2d 494, 499–500 (8th Cir.1992) (last-minute trial requests for appointment of substitute counsel are not favored unless breakdown complete or conflict irreconcilable). We further hold that the record of trial clearly shows appellant received effective and unconflicted representation by his detailed defense counsel, even after he made his unsworn sentencing statement criticizing those counsel. *See Cuyler v. Sullivan,* 446 U.S. 335,

100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (ineffective-assistance-of-counsel relief where no conflict-of-interest objection requires showing of actual conflict and prejudice).

The members found appellant guilty of numerous violent acts against his active-duty wife. During his unsworn sentencing statement, he made various comments critical of the legal representation provided by his detailed defense counsel during the findings portion of his court-martial. Appellate defense counsel set forth these comments in their final brief as follows:

Members of the jury, I, Sergeant Lindsey, for starters, I was always taught to stick by the truth no matter what, okay. I went through several different lawyers and they all told me different things.... One lawyer says to get everything done. I did that. Disprove all the stuff that is up there. I get two more individuals and they—you know, from their advice, their experience and everything, "We will hold back on them." Okay.

\* \* \*

I wrote a statement, but they said, "Don't put it in" because I told the truth in that statement and I mentioned the word that I was angry at the time .... They was worried about—"Oh, the prosecutors may dog you out on this."

\* \* \*

That was—I don't understand why people could believe stuff like that. Her commander, my commander, first shirts, they all knew she (the appellant's wife) had made that story up. That's why she got the written order from that day on. No, but they (appellant's trial defense counsel) didn't want ... to mention that. They didn't want to question my commander about it. They didn't want to question her commander about it. I kept asking them, "Why don't you question them? Why don't you"—"No, we know what we are doing. We are professionals." Professionals, you know, sometimes forget there is more to professionalism because this was our life between my wife and I and I knew stuff they didn't know. Huh.

\* \* \*

Here it is 19 December. I've got proof of that. I've got statements from my mom. I've got statements from a brother. I got a phone bill to prove that she knew of my visitation with the twins and Chantelle. But, again, they didn't—they didn't want to tell you that my wife, in the Article 32, claimed she did not make a statement down in Prince George's County in reference to the restraining order, but she did.

\* \* \*

Here it is. Here it is toward the end and I am thinking the truth will come out. But again, I was told to hold back. "We got 'em, we got 'em, we got 'em." Yeah. I was the one that got the guilty. (Gesturing toward defense counsel). They the ones that get to go home tonight. I don't. They go get to see their kids. I don't get to see my kids.

\* \* \*

I know the next time, if there is a next time, because I should have testified, but no, I was advised not to. Why? Because of professional opinion, they know how the courtroom is ran. But they wasn't the one facing four life sentences in addition to fifty years.

\* \* \*

Medical records show—yes, there was a medical record. No, we didn't introduce that into evidence. Medical records showed not a trace, not a trace of sexual intercourse by her. No, no, they don't want to introduce it into evidence.

\* \* \*

I thought—I think 'cause I'm fair that they—for them to tell me not to testify, I think it is totally unfair because they've been through—they experienced this—this is their professional opinion, professional opinion. I've got to forgive them, too. It isn't like they never did, but just because of that, their professional opinion, I've got to forgive them.

\* \* \*

I just wish I would have better professional opinion, telling me to go ahead....I shouldn't have—I shouldn't have listened

to them when I knew there was two sides to the story. . . .

Final Brief at 4–5.

The record of trial shows that during a session under Article 39(a), UCMJ, 10 USC § 839(a), the military judge, at the request of detailed defense counsel, subsequently made a counsel-related inquiry of appellant. The record states:

MJ: Counsel, you asked for a 39(a)?

DC: Yes, Your Honor. In light of the unsworn testimony by Sergeant Michael Lindsey, I think that brought up the issue of possible ineffective assistance of counsel. We asked Michael Lindsey during the break if he wanted our continued service and when we asked, he did not have an answer at that time. We mentioned that we would ask the Judge on the record and the Judge would ask him his feelings on that matter.

MJ: Very well.

Sergeant Lindsey, right now you are represented by Captain Schaefer and Captain Thompson, your detailed defense counsel. And we discussed your rights to counsel earlier in this proceeding. They are still your counsel. They are your counsel through the end of this trial, as well as during the post-trial portion of the trial and, in fact, will work with appellate defense counsel in helping perfect your defense.

However, given the information that you have stated in your unsworn statement, more likely than not, someone else will be appointed to represent you to assist in the post-trial matters of your case because you have expressed a lack of faith and confidence in your attorneys. Do you desire to continue to be represented by Captain Schaefer and Captain Thompson because, *if you don't, then what I am going to do is advise you of what your option is. And your option at this time, at this point in the proceedings, would be, if you fired them to proceed by representing yourself at this trial. Do you understand that?*

\*      \*      \*

MJ: Let me advise you further that I think it is unwise for you to represent yourself. I strongly urge you not to represent yourself. *Knowing all that I have told you, do you want to act as your own lawyer and dismiss Captain Schaefer and Captain Thompson, or do you want them to continue to represent you?*

ACC: (No response.)

MJ: We will take a recess and you can discuss this issue with your counsel and then let me know what you want to do to proceed.

ACC: Okay, sir.

MJ: Court is in recess.

(The court recessed at 1525 hours, 29 September 1995.)

MJ: This 39(a) session will come to order. Please be seated.

(The Article 39(a) session was recalled to order at 1540 hours, 29 September 1995, with all parties present except the members.)

MJ: Sergeant Lindsey, have you had an opportunity to discuss this issue with your counsel?

ACC: I have, sir.

MJ: *Do you wish to continue to be represented by Captain Schaefer and Captain Thompson?*

ACC: *I agreed that they stay on and— yes, I do.*

MJ: Okay, thank you very much.

(Emphasis added.)

——  ——  ——

Appellant's basic claim is that the military judge failed to act as required by military law to ensure that his rights to counsel under Article 38(b), UCMJ, 10 USC § 838(b), and the Sixth Amendment were satisfied. He first asserts that the military judge erred by failing to advise him of his right to request appointment of substitute detailed counsel under Article 38, after he attacked the findings performance of his detailed counsel in his unsworn sentencing statement. *See United States v. Leaver*, 36 MJ 133, 135 (CMA 1992). He then asserts that the military judge erred by failing to advise him of his right to unconflicted counsel under the Sixth Amendment and ensure such a conflict did not occur as a result of his counsel com-

plaints. *See United States v. Henry*, 42 MJ 231 (1995); *United States v. Davis*, 3 MJ 430 (CMA 1977). In sum, he contends that there is unacceptable doubt in his case whether his rights to counsel under the Code and the Constitution were provided him during the sentencing proceedings.

It is well established that an accused servicemember has both a statutory and constitutional right to representation by legal counsel at his court-martial. *See United States v. Hicks*, 47 MJ 90, 92 (1997); Art. 38(b). If desired, detailed military counsel will be provided to a servicemember at government expense without regard to the servicemember's financial status. *Id.* Military defense counsel detailed to represent a servicemember, however, must provide effective assistance of counsel within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See United States v. Scott*, 24 MJ 186 (CMA 1987). This right to effective assistance of counsel applies at all stages of the proceedings against the military accused. *United States v. Fluellen*, 40 MJ 96, 98 (CMA 1994).

In appellant's case, he was provided two detailed military defense counsel prior to trial to represent him at his court-martial. Upon questioning by the trial judge, he clearly indicated his acceptance of these military attorneys as his legal representatives. It was only after a well-contested trial and adverse findings of guilty by the members that appellant, in his unsworn statement, voiced his dissatisfaction with his lawyers' work.

Our first concern is whether these complaints alone required that appellant be advised that he had a right to request substitute defense counsel be detailed to finish his case. *Cf. United States v. Hanson*, 24 MJ 377, 379 (CMA 1987)(military judge insists new detailed counsel be appointed where he found ineffective assistance of detailed counsel); *United States v. Miller*, 7 USCMA 23, 28, 21 CMR 149, 154 (1956)(if military accused has just cause to question competence of detailed counsel, he may request appointment of new one); *see generally* RCM 901(d)(4)(A), Manual for Courts–Martial,

United States (1995 ed.) (military judge's responsibility in opening session of court-martial to advise accused of his right to detailed counsel).

As noted above, appellant contends that the military judge was required to advise him of his right to request substitute detailed counsel when he questioned his detailed counsel's effectiveness in his unsworn statement. *See generally United States v. Baca*, 27 MJ 110, 115 (CMA 1988) (military judge's *sua sponte* responsibility to ensure justice). He heavily relies on the decision of this Court in *United States v. Leaver, supra*, as authorizing appointment of substitute counsel in these circumstances. *See United States v. Carter*, 40 MJ 102, 105–06 (CMA 1994). He implies that, since this right existed under this military case law, the trial judge was bound to advise him about it. *Id.* at 105 (responsibility of defense counsel to advise military accused of the consequences of termination of existing attorney-client relationship).

*Leaver*, however, was a post-trial review case which required new counsel who could objectively prepare a response to the post-trial recommendation without evaluating his own criticized conduct at trial. This decision and its progeny are not logically applicable where the complaint is made during the trial itself and the criticized counsel is not called upon to evaluate his criticized work. In addition, the appointment of substitute counsel in *Leaver* was determined appropriate where counsel was criticized *and* the accused indicated his desire to sever his relationship with that counsel. As noted above, appellant, on questioning by the military judge, clearly indicated that he did not want to sever his relationship with detailed defense counsel. Accordingly, we conclude that our decision in *Leaver* did not require the trial judge, on the basis of counsel complaints alone, to advise appellant of a right to have or request substitute detailed defense counsel.

Taking a slightly different tack, appellant alternatively contends that his counsel complaints created a possible conflict of interest requiring advice by the judge on his right to substitute counsel. Relying on the decision

of this Court in *United States v. Carter*, *supra*, and the Discussion to RCM 901(d)(4), he argues that the military judge was required to fully explain his right to effective assistance of counsel in the context of his right to sever his relationship with detailed defense counsel. Such an explanation, he asserts, necessarily includes discussion of his right to request appointment of substitute counsel. *See Davis*, 3 MJ at 432 (basic ramifications of conflict situation must be explained to accused); *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir.1993); *United States v. Petz*, 764 F.2d 1390, 1393 (11th Cir.1985). This may be, but we conclude that any misadvice given by the trial judge in this case did not deny appellant effective assistance of counsel.

More particularly, correct advice on the right to substitute detailed military defense counsel in this case would not have substantially affected appellant's decision to retain his originally detailed counsel. Unlike the posttrial *right-to-counsel* entitlement recognized in *Leaver*, appellant claims only a lesser *right to request appointment of substitute counsel. See United States v. Kelly*, 39 MJ 235, 238 (1994); *United States v. Miller*, *supra*. In addition, it is well established in civilian criminal courts that the appointment of substitute counsel during the trial itself, especially late in the proceedings, is not generally favored. *See Armstrong*, 112 F.3d at 345; *United States v. D'Amore*, 56 F.3d 1202, 1205 (9th Cir.1995); *United States v. Klein*, 13 F.3d 1182, 1185 (8th Cir.1994).

■ Finally, a request for substitute counsel is not usually granted where the record of trial shows between an accused and his counsel a "differe[nce] on trial tactics and strategy, and expressed frustration with each other" but it "does not reflect an irreconcilable conflict or complete breakdown in communication between them." *Swinney*, 970 F.2d at 499; *United States v. Grady*, 997 F.2d 421, 424 (8th Cir.1983). This is exactly appellant's case. We thus conclude that the military judge's failure to properly advise appellant of this remote legal possibility would not have substantially influenced his counsel-re-

tention decision. *Cf. United States v. Johnson*, 21 MJ 211 (CMA 1986) (two-judge court splits on prejudice analysis in counsel-misadvice cases).

■ Turning to appellant's final claim that the military judge did not fully investigate the possibility of a conflict of interest in his case, we also conclude that it lacks merit. The Discussion to RCM 901(d)(4) does suggest that conflict-of-interest questions concerning counsel be immediately investigated by a military judge, even if not raised by the defense. It states:

### Discussion

Whenever it appears that any defense counsel may face a conflict of interest, *the military judge should inquire into the matter, advise the accused of the right to effective assistance of counsel, and ascertain the accused's choice of counsel.* When defense counsel is aware of a potential conflict of interest, counsel should discuss the matter with the accused. If the accused elects to waive such conflict, counsel should inform the military judge of the matter at an Article 39(a) session so that an appropriate record can be made.

(Emphasis added.) We also have required such affirmative judicial action. *See United States v. Henry* and *United States v. Davis*, both *supra*. Nevertheless, the trial judge's inquiry in appellant's case, while somewhat abbreviated, did substantially satisfy this obligation to ferret out counsel conflicts. *See Carter*, 40 MJ at 106.

In this regard, we note that the basis for a possible conflict-of-interest claim in appellant's case was obvious to all the parties to this trial, *i.e.*, appellant's rambling grumblings against his detailed lawyers. Thus, unlike the situations in *Henry* and *Davis*, a more detailed inquiry to determine the circumstances giving rise to the possible conflict was not necessary, and to this date, counsel have not established what a more detailed inquiry would have revealed. Moreover, the military judge did question appellant about his intentions concerning detailed counsel in light of those complaints. He also advised appellant that termination of that attorney-

client relationship was possible and gave substantially correct advice concerning its perilous ramifications. Lastly, the judge secured appellant's agreement to continued representation by those counsel, despite his previously expressed dissatisfaction with their professional performance.

■ In any event, there was no objection on conflict-of-interest grounds by appellant, although he was provided an opportunity to do so. In addition, he has made no claim of ineffective assistance of counsel on appeal. Finally, we have closely examined the record of the subsequent sentencing proceedings and conclude that appellant received competent and unconflicted legal representation. In these circumstances, we conclude that appellant has not shown an actual conflict of interest which prejudiced his case but, rather, the mere possibility of a conflict of interest. Such a showing is insufficient for appellate relief. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (where no objection, Sixth Amendment violation requires finding that actual conflict of interest also adversely affected counsel's performance).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX concurs.

CRAWFORD, Judge, with whom GIERKE, Judge, joins (concurring in the result):

When there is an untimely request for a termination or change of counsel, the request need not be granted unless the defendant establishes an "irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *See, e.g., United States v. Swinney,* 970 F.2d 494, 499 (8th Cir.1992). Upon such a *prima facie* showing, the trial judge will hold a hearing on the risks presented and what action should be taken. Absent a *prima facie* presentation of an irreconcilable conflict or a complete breakdown of communication, there is no harm in failing to advise a defendant regarding retention of counsel, appointment of substitute counsel, or *pro se* representation.

In *Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), the Court concluded that when the trial defense counsel timely identifies and alerts the trial judge to a potential conflict of interest, the trial judge must "either ... appoint separate counsel or ... take adequate steps to ascertain whether the risk [of an actual conflict of interest] was too remote to warrant separate counsel." The failure to take such steps "in the face of the representations made by counsel weeks before trial and again before the jury was impaneled" was held by the Supreme Court to deprive the defendant of "assistance of counsel." *Id.*

"Based on the Sixth Amendment right to counsel and the Uniform Code of Military Justice, this Court has been diligent in ensuring the right to effective assistance of counsel, starting with the pretrial stage through appellate review." *United States v. Walters,* 45 MJ 165, 166 (1996); *see also United States v. Fluellen,* 40 MJ 96 (CMA 1994). This right accrues regardless of indigency. *United States v. Harris,* 19 MJ 331, 336 (CMA 1985). While the convening authority has the discretion to accommodate a request for new counsel, the defendant is not entitled to replacement counsel, even pretrial, when there is only a difference as to tactics or strategy. RCM 505(d), 506(b)(3), (c), & (d), Manual for Courts–Martial, United States (1995 ed.). However, the defendant does have the right to obtain a civilian lawyer at no expense to the Government or to represent himself *pro se. Cf. United States v. Mix,* 35 MJ 283 (CMA 1992).

Since there has been no presentation of an "irreconcilable conflict, or a complete breakdown in communication" in this case, there was no error in failing to further advise appellant on the right to representation or to make further inquiry.

EFFRON, Judge (dissenting):

The lead opinion holds that any error committed by the military judge in failing to advise appellant of his right to request substitute detailed counsel during his sentencing hearing was harmless and that the record of trial clearly shows appellant received uncon-

flicted representation by his detailed defense counsel, even after he made an unsworn sentencing statement criticizing those counsel.

During the presentencing proceeding at trial, appellant clearly raised the issue of ineffective assistance of counsel in his unsworn statement. He expressly articulated several areas in which he believed his counsel were deficient, including failure to present alibi evidence, medical evidence, and other witnesses. He also indicated that he was not properly advised by his counsel, who would not allow him to testify in his own behalf.

As a result of appellant's expressed dissatisfaction with his defense counsel, they requested a hearing pursuant to Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a). During this session, they informed the military judge that, because the unsworn testimony brought up the issue of possible ineffective assistance of counsel, they had asked appellant if he wanted their continued service—and appellant did not give them an answer.

Because defense counsel and appellant were unable to communicate on this matter, the military judge then stepped in to resolve this issue, which was appropriate. The critical error came when the military judge gave appellant incomplete advice by telling him that his choices were to keep his military counsel or to proceed *pro se.*

The lead opinion, in reviewing appellant's reliance on *United States v. Leaver,* 36 MJ 133 (CMA 1992), notes that, when questioned by the military judge, appellant clearly indicated that he did not want to sever his relationship with his detailed defense counsel. The lead opinion, however, does not adequately address the fact that appellant was never informed of his right to request substitute counsel. The record shows that appellant, after much hesitation and consultation, reluctantly agreed to keep his counsel after the judge explained to him in excruciating detail the hazards of proceeding *pro se,* without informing him of his right to request substitute counsel.

I disagree with the lead opinion's conclusion that complete advice on the right to substitute detailed military defense counsel would not have substantially affected appellant's decision to retain his originally detailed counsel. The record indicates, through appellant's unsworn statement, more than a "differe[nce] on trial tactics and strategy." 48 MJ at 98. Had appellant been given complete advice, he may very well have requested new attorneys.

Once it became necessary for the military judge to take an active role in resolving the problem, he was under an obligation to give complete and accurate advice so appellant could make an informed decision whether to continue with the counsel he had criticized. If the counsel, rather than the military judge, had given appellant the similar incomplete advice (*e.g.,* "keep us or you're on your own"), we would hold them accountable and find error. There is no rational basis for holding the military judge any less accountable.

The military judge should have informed appellant of the possibility of having other military counsel assigned or of engaging civilian counsel. If appellant had requested other counsel, the military judge could then have conducted a balancing test. Even if the military judge ultimately denied a request from appellant to exercise either of these rights (*e.g.,* if the new military counsel appellant requested was not reasonably available or the trial was so close to conclusion that the military judge deemed no prejudice if the current counsel continued to represent appellant), at least a record would have been developed so this Court could evaluate the military judge's reasoning.

As the record stands, appellant raised the issue of incompetence, and the military judge recognized a possible conflict of interest. He forecast the probability that other counsel would have to be appointed to represent appellant post-trial because of appellant's expressed lack of faith and confidence in his attorneys; and, in fact, other counsel was appointed to handle appellant's post-trial matters. Yet, appellant was not given complete advice as to his options at that stage of the trial.

Under the facts of this case, I would find an abuse of discretion in the lower court's affirmance as to this issue, and I would remand the case for further consideration in light of the error.