## UNITED STATES

### v.

### Airman First Class Phillip C. DORMAN, United States Air Force.

### ACM 34237.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Aug. 2000.

Decided 28 June 2002.

Appellate Counsel for Appellant: Philip D. Cave, Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Patience E. Schermer.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Captain Adam Oler.

Before SCHLEGEL, ROBERTS, and PECINOVSKY, Appellate Military Judges.

OPINION OF THE COURT

SCHLEGEL, Senior Judge:

In a trial before a military judge sitting alone, the appellant was convicted, in accordance with his pleas, of attempting to use psilocybin, the wrongful use of methamphetamine and marijuana on divers occasions, the wrongful use of methylenedioxymethamphetamine (ecstasy), and the wrongful distribution of ecstasy on divers occasions, in violation of Articles 80 and 112a, UCMJ, 10 U.S.C. §§ 880, 912a. The appellant's pretrial agreement with the convening authority limited confinement to 12 months and any punitive discharge to a bad-conduct discharge. His adjudged sentence included a bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, and reduction to E–1. The appellant received clemency when the convening authority further reduced his confinement to 8 months. On appeal, the appellant complains that he was denied effective post-trial assistance of trial defense counsel, that this court is disqualified from hearing his appeal because his trial defense counsel is our current commissioner, that one of his trial defense counsel had a conflict of interest because he represented the appellant's wife, and that his sentence is inappropriately disparate from that of his wife. We find the appellant's arguments to be without merit, and affirm the findings and his sentence.

## I. Background

After completing basic training and technical school, the appellant was assigned to the security forces squadron at Beale Air Force Base (AFB), California, in January 1999. In March, the appellant went to Saudi Arabia on temporary duty (TDY). Shortly after returning to Beale AFB in early July, he used methamphetamine and marijuana at an off-base party. About one week later, the appellant used marijuana again, this time on the base. On approximately 21 July, he used methamphetamine in his dormitory room with his girlfriend, Airman First Class (A1C) Nicole Ferranti. Near the end of July, the appellant and his girlfriend ate what they believed to be psilocybin. The next day, the appellant used marijuana with friends in a parking lot in Yuba City, California. During the middle of August, the appellant obtained six pills of ecstasy from another airman. The appellant ingested two of the pills, sold two to another airman for $40.00, and gave one to A1C Ferranti. On 26 October, the appellant used marijuana for the final time. He was questioned by the Air Force Office of Special Investigations (AFOSI) about his drug use on 31 October and made a full confession. Thereafter, the appellant cooperated with the AFOSI until March 2000. He married A1C Ferranti in January 2000. On 28 July 2000 the appellant submitted an offer for a pretrial agreement, which was accepted by the convening authority. The trial was held on 3 August 2000.

The appellant's wife was also charged with attempting to use psilocybin, and the wrongful use of methamphetamine and ecstasy. In addition, she was charged with another use of methamphetamine, which occurred while she was an informant for the AFOSI. The documents provided by the appellant do not indicate whether she had a pretrial agreement with the convening authority. Her general court-martial occurred the day before the appellant's. She pled guilty, and was sentenced by a different military judge to confinement for 4 months and reduction to E–1.

## II. Whether this Court is Disqualified from Reviewing the Appellant's Appeal

The appellant, in the single sentence in his brief on this issue, asks us to state whether this court has a written or unwritten policy about judges or staff discussing cases with appellate counsel when such discussions are required or necessary. We remind the appellant that the tradition in appellate practice is that we ask the questions. Moreover, *United States v. Morgan*, 47 M.J. 27 (1997), permits us to review the appellant's case as long as we issue "a specific statement describing the extent, if any, of [our commissioner's] participation in the appellate review of this case." *Id.* at 30. Our commissioner did not participate in the appellate review of this case. Therefore, we see no reason to disqualify ourselves from performing our statutory duty. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

### III. Conflict of Interest

The appellant's first detailed defense counsel is our commissioner, who was then assigned as the Area Defense Counsel (ADC) at Ellsworth AFB, South Dakota. At some point after the offer of the pretrial agreement was submitted to the convening authority, a Circuit Defense Counsel (CDC) for the Western Circuit was also detailed to represent the appellant. The CDC, along with a different ADC, represented the appellant's wife at her court-martial.

During the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a) session, the judge informed the appellant of his rights to counsel. After listening to the judge, the appellant said that he wanted to be represented by the CDC and ADC. The judge then noted that the CDC represented A1C Ferranti in a companion case.[1]

MJ: Before we move on, my understanding, [CDC], is that you had represented an Airman First Class Ferranti in a companion case, or a related case to this case. Is that true?

DC: That is true, Your Honor.

MJ: All right, thank you. Airman Dorman, I have some questions for you concerning representation by [CDC] since he also represented an A1C Ferranti in what may be a similar court-martial: Do you understand that you have a constitutional right to be represented by counsel who has undivided loyalty to you and your case?

ACC: Yes, sir.

MJ: And do you understand that a lawyer ordinarily should not represent more than one client when the representation involves a matter arising out of the same incident?

ACC: Yes, sir.

MJ: For a lawyer to represent more than one client concerning a matter arising out of the same incident you have to consent to that representation. Do you understand?

ACC: Yes, sir.

MJ: Have you discussed this matter with your defense counsel and [CDC] in particular?

ACC: Yes, sir.

MJ: After discussing this matter with your defense counsel, did you decide for yourself that you would like to have [ADC] [CDC] still represent you?

ACC: Yes, sir.

MJ: Do you understand that when a defense counsel represents two or more clients regarding a matter arising out of the same incident, then the lawyer may have divided loyalties; that is, for example, the defense counsel may be put in the position of arguing that one client is more at fault than the other client?

ACC: Yes, sir.

MJ: Understanding that even if an actual conflict of interest does not presently exist between your defense counsel representing you and his other client, but that one could possibly develop, do you still desire to be represented by [CDC]?

ACC: Yes, sir.

MJ: Do you understand that you're entitled to be represented by another lawyer where no potential conflict of interest would arise?

ACC: Yes, sir.

MJ: Knowing this, would you please tell me why you want to give up your right to conflict-free counsel and be represented by [CDC]?

1. The judge also informed the appellant that he observed "most" of A1C Ferranti's court-martial and asked whether either side wanted to question or challenge him. Neither side questioned or challenged the judge.

ACC: Yes, sir. Discussing it with my lawyers, it is in my best interests to have [CDC] as part—is helpful for my case, sir.

MJ: Very well, do you have any questions at all about your right to conflict-free counsel?

ACC: No, sir.

MJ: Is there a written waiver of conflict-free counsel in this case?

ADC: No, sir.

MJ: Under the circumstances, I find that the accused has knowingly and voluntarily waived his right to conflict-free counsel, and may be represented by [CDC] at this court-martial.

The appellant now asserts there was an actual conflict of interest with the CDC's representation of him. He claims prejudice and alleges the "brief unspecific inquiry by the military judge was insufficient evidence of a knowing, intelligent, and voluntary waiver of the conflict."

### Analysis

■ An appellant is "entitled to have conflict-free counsel." *United States v. Murphy,* 50 M.J. 4, 10 (1998) (citing *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). If a conflict of interest involving the accused's counsel arises during trial, the judge must resolve the matter on the record. *United States v. Breese,* 11 M.J. 17, 20 (C.M.A.1981). The judge should inquire of the accused whether: (1) He has been advised of his right to effective representation; (2) He understands the reasons for his attorney's possible conflict of interest and the dangers of the conflict; (3) He has discussed the matter with his attorney or if he wishes with outside counsel; and (4) He voluntarily waives his Sixth Amendment protection. *Id.* at 22 (citing *United States v. Davis,* 3 M.J. 430, 434 (C.M.A.1977)). *Accord United States v. Lindsey,* 48 M.J. 93, 98 (1998). *See also,* Rule for Courts–Martial (R.C.M.) 901(d)(4), Discussion. "[A] defendant who raised no objection at trial must demonstrate that an actual conflict of inter-

est adversely affected his lawyer's performance." *United States v. Hicks,* 52 M.J. 70, 72 (1999) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), *quoted in Breese,* 11 M.J. 17, 20 (C.M.A.1981)). We may resolve this assignment of error using the appellant's own expression of satisfaction with his counsel. *United States v. Ginn,* 47 M.J. 236, 248 (1997).

■ This issue has no merit. The inquiry conducted by the judge with the appellant on the record complies with the procedure first suggested in *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir.1975), and endorsed by our superior court in *Davis* and *Breese.* It is a textbook example of a judge knowing and following the law. There is nothing "unspecific" about it. The appellant's responses demonstrate a knowing and voluntary waiver of his right to be represented by a conflict-free counsel. In addition, before his guilty pleas were accepted and during the review of his pretrial agreement, the appellant, under oath, told the judge that he was satisfied with his counsels' advice.

## IV. Sentence Appropriateness

The appellant complains because he received a bad-conduct discharge and his wife did not. In his view, her conduct was more serious.

### Analysis

■ We are required to engage in sentence comparison only when sentence appropriateness can be fairly determined by reference to disparate sentences adjudged in closely related cases. *United States v. Wacha,* 55 M.J. 266, 267 (2001) (citing *United States v. Lacy,* 50 M.J. 286, 288 (1999); *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)). The appellant bears the burden of demonstrating that his case is "closely related" to another and that the sentences are "highly disparate." *Lacy,* 50 M.J. at 288. "Sentence comparison does not require sentence equation." *United States v. Durant,* 55 M.J. 258, 260 (2001). Aside from those instances in which we are required to conduct sentence comparison, we also have the discretion to consider and compare other courts-martial sentences in reviewing a case

for sentence appropriateness and relative uniformity. *Wacha,* 55 M.J. at 267; *United States v. Sothen,* 54 M.J. 294, 296 (2001); Article 66(c), UCMJ, 10 U.S.C. § 866(c). We are "not limited to a narrow comparison of the relative numerical values of the sentences at issue but may also include consideration of the disparity in relation to the potential maximum punishment." *Lacy,* 50 M.J. at 289.

■ Certain aspects of the appellant's case mirror that of his wife. They both attempted to use psilocybin, and used methamphetamine twice and ecstasy once. In addition, they both cooperated with the AFOSI. However, this is where the similarity ends. The appellant was also charged with divers uses of marijuana and distribution of ecstasy. Those offenses carried an additional period of confinement for 17 years. His maximum sentence included a dishonorable discharge, confinement for 32 years, forfeiture of all pay and allowances, and reduction to E–1. The appellant's wife could have received similar punishments, however, her maximum confinement was limited to 20 years. We find that despite their shared use of methamphetamine and ecstasy, and the attempt to use psilocybin, these cases are not closely related because the appellant was convicted of additional serious offenses.

Even if we were to use our discretion and compare the appellant's sentence to his wife's, we would not find his sentence to be highly disparate. The appellant did not submit a copy of her summarized record of trial for our review. However, some of the documents he did submit to the court revealed there was additional mitigation evidence in her case. His wife waived her right to an Article 32, UCMJ, 10 U.S.C. § 832 investigation, which saved the government effort and expense. Although they both assisted the AFOSI, the appellant's wife provided information on 14 additional individuals.

We cannot place the appellant in the same category as his wife because he also used marijuana on four occasions and distributed ecstasy. These additional offenses provide a

rational basis for the bad-conduct discharge he received. After reviewing the record and considering the documents the appellant provided to us, we find that his sentence is appropriate. *United States v. Healy,* 26 M.J. 394 (C.M.A.1988); *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982).

## V. Ineffective Assistance of Counsel

In an affidavit filed with this court, the appellant raises a number of claims of ineffective assistance. In their brief on this issue, appellate counsel amplify and expand the appellant's allegations into questions they would put to his ADC concerning her representation of the appellant, and by doing so raise the specter of ineffective assistance at trial.[2] In a unique argument, the appellant avers that because his ADC refused to talk with his appellate attorneys or give them her files, she provided ineffective post-trial assistance.[3] The appellant asks us to order the ADC to turn over her files or set aside his bad-conduct discharge.

### Analysis

■ An accused is entitled to the effective assistance of counsel at the pretrial, trial, and post-trial stages of a court-martial. *United States v. Fluellen,* 40 M.J. 96, 98 (C.M.A. 1994). Counsel is presumed competent. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *United States v. Scott,* 24 M.J. 186, 187 (C.M.A.1987), our superior court adopted the two-pronged test announced by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether an accused received effective assistance of counsel. The appellant must show that the ADC made errors that were so serious that she was not functioning as counsel in accordance with the Sixth Amendment, and that the errors deprived him of a fair trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ In evaluating an accused's allegation of errors, we conduct the following analysis. First, are the allegations made by the appellant true? If they are, is there a reasonable

2. We granted the appellant's motion to consider a wide variety of documents, including e-mails between the ADC and appellate counsel.

3. The appellant does not complain that the CDC refused to turn over materials to him.

explanation for defense counsel's actions? Second, if true, did the level of advocacy fall below the performance ordinarily expected? Third, if we find ineffective assistance of counsel, is there a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt? *United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991).

a. Ineffective Assistance of Counsel at Trial.

1. Are the allegations made by the appellant true? If they are, is there a reasonable explanation for defense counsel's actions?

 A. The appellant complains that no one from the AFOSI testified at his trial about his cooperation, but an agent did testify at his wife's court-martial. This is true. However, the stipulation of fact contained a glowing paragraph about the appellant's cooperation. The appellant provided us with a letter written after the trial by the AFOSI agent who was in charge of the investigation. In that letter, the agent declined to provide a character reference for the appellant and confirmed the accuracy of the information about the appellant in the stipulation of fact. The letter provides no additional facts but does note the appellant compromised his confidentiality near the end of the investigation. We find that it was reasonable to rely on the information in the stipulation about the appellant's cooperation with the AFOSI. The appellant was not harmed by the failure to call a live witness because the appellant's cooperation with the AFOSI could not have been painted in a better light than it was in the stipulation.

B. He complains that a CDC represented his wife, but that a junior and inexperienced ADC represented him. This is not true. A CDC and his detailed ADC represented him. While we have no information to compare the experience levels of the two different ADCs, the CDC was the same person. Further, when asked by the judge if he was satisfied with his counsel, the appellant, on more than one occasion, said yes. Finally, in his affidavit, the appellant conceded that the ADC's representation of him at the Article 32, UCMJ, 10 U.S.C. § 832 investigation was satisfactory.

C. The appellant's next complaint is vague and subjective. The appellant muses that although the same CDC represented his wife and did not prejudice his case, the CDC did nothing to help him. Without specifics, we are unable to conduct any analysis on this complaint.

D. The appellant speculates the CDC could have made a better sentencing argument than his ADC, but has produced no evidence to support this conclusion. The appellant has failed to establish this proposition as true. The appellant wanted to avoid receiving a punitive discharge. He specifically asked the judge for more confinement in lieu of a discharge. The ADC's sentencing argument was consistent with the themes raised in the appellant's sentencing case. She emphasized the appellant's youth, good duty performance, depression, cooperation with the AFOSI, and the impact the conviction would have on his future. She repeated the appellant's desire for additional confinement in lieu of a punitive discharge. We find nothing deficient about this sentencing argument before the judge.

E. The appellant states he did not fully understand the conflict of interest issues. We find this is not true based on our previous analysis.

F. Finally, he notes that his mother wanted the fact that he was diagnosed with attention deficit disorder (ADD) raised at trial, but that it was not. We also find this is not true. The appellant's mother testified that he was diagnosed with a learning disability in the fourth grade.

Only one of the appellant's allegations had any merit, and there is a reasonable explanation for that allegation. We also find that both counsels' performance did not fall below the level ordinarily expected of an attorney. Thus, we do not proceed to the third prong of *Polk*.

The evidence shows that the charges against the appellant were based on his statements to the AFOSI, which were admit-

ted as prosecution exhibits.[4] In his first statement on 31 October 1999, the appellant said he used methamphetamine the first time after drinking alcohol and being pressured by someone named Adam. A few weeks later he told A1C Ferranti about his use, asked her to try it, and then gave her $150 to buy some of the drug. After using it, they both became sick. He also admitted to using marijuana, using and distributing ecstasy, and an additional use of methamphetamine. A consistent theme in the statement is that he used alcohol and drugs because he was depressed. In the second statement given on 31 October, the appellant confessed to other marijuana uses, provided additional information about the distribution of ecstasy, and reemphasized the role of alcohol in these offenses.[5] The statement the appellant gave on 9 February 2000 detailed the attempt to use psilocybin.

An accused can require the prosecution to prove his guilt beyond a reasonable doubt. However, when the evidence is overwhelming, like it was in the appellant's case, often the most intelligent course of action is to offer a pretrial agreement and plead guilty in an effort to limit the sentence. This was the best advice the appellant could have been given because the prosecution could have easily met their burden of proof in this case. The appellant's decision to plead guilty was wise and undoubtedly saved him additional confinement.

In sentencing, the judge knew about the appellant's depression from his written statements to the AFOSI and unsworn statement during sentencing. The appellant emphasized the fact that he received mental health counseling for depression in Saudi Arabia. He also provided a simple and rational explanation about why he used drugs when he got back to Beale AFB. He said, "[T]he drugs initially made me feel better." The appellant took sole responsibility for his drug use and detailed his cooperation with the AFOSI. We also note that the clemency matters submitted by the ADC resulted in the convening authority approving only 8 months of confine-

ment, 2 months less than adjudged and 4 months below the limit established by the pretrial agreement.

Our review of the record of trial and allied papers convinces us that the appellant was effectively represented at trial and during the post-trial processing of his case under Rule for Courts–Martial (R.C.M.) 1105.

**b. Ineffective Post–Trial Assistance of Counsel**

The appellant claims his ADC provided ineffective assistance of counsel post-trial by failing to turn over her files. The e-mails submitted to us by the appellant show that the ADC simply wanted to know what appellate counsel was looking for before automatically turning over something from her files to them. Appellate counsel's response was that it was a request he made in every case. Without specifics, the ADC was unwilling to blindly turn over anything but documents signed by the appellant concerning the appellant's decisions about testifying, pleas, election of forum, and rights to counsel. Appellate counsel elected to ignore her request for specifics and raise the issue in this appeal.

The appellant relies on *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977), for the proposition that a trial defense counsel has certain continuing post-trial duties. While this general proposition is true, the Court also recognized that trial defense counsel's representational duties cease when appellate counsel have been properly appointed. *Id.* at 93. *See also* Article 70, UCMJ, 10 U.S.C. § 870.

 Appellate defense counsel may be given access to trial defense counsel's files and the reasonable opportunity to reproduce them even when the files are requested in order to raise a claim of ineffective assistance of counsel at trial. *United States v. Dupas*, 14 M.J. 28, 31 (C.M.A.1982). However, *Dupas* foresaw the possibility of a dispute between trial defense and appellate defense counsel involving these files and directed that

---

4. These statements also contradict his argument that his wife was more culpable.

5. The judge conducted an inquiry to insure that although the appellant was drinking alcohol, he knew that he was using illegal drugs.

a court resolve the matter. *Id.* Even though we have the authority to compel trial defense counsel to produce evidence when a claim of ineffective assistance is raised on appeal, we do so only after examining the allegations of ineffectiveness, the government's response, and the record of trial. *United States v. Lewis,* 42 M.J. 1, 6 (1995). "[A]n appellant is not entitled to compel his trial defense attorney to furnish an affidavit, and he is not entitled to an evidentiary hearing as a matter of law, either as a statutory right under the Uniform Code of Military Justice or as a matter of a procedural right created in the Manual for Courts–Martial, United States, 1984." *United States v. Ingham,* 42 M.J. 218, 224 (1995) (citing *Lewis*).

■ The appellant claims he is automatically entitled to the ADC's files as a matter of law. In doing so, he ignores our superior court's holdings in *Lewis* and *Ingham,* which we interpret as requiring us to find that a valid need exists before ordering trial defense counsel to produce responsive information on matters involving ineffective assistance of counsel. According to *Lewis,* we exercise that authority only in the event that we determine "that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence." *Lewis,* 42 M.J. at 6. In this case, we find no such evidence.

■ The appellant pursued the wisest course of action in view of the evidence against him. He was a first term airman who only served 10 months in his career field before being removed for drug abuse. He made a full confession to the AFOSI, which could have been easily corroborated. The appellant's explanation for his drug use was simple, he missed his family and the drugs made him feel better. He elected to plead guilty in exchange for limits on the type of punitive discharge and period of confinement the convening authority would approve. He chose to be represented by an attorney who also represented his wife after discussing the conflict with his attorney and being informed of his rights by a judge. His sentencing case included an abundance of extenuating and mitigating evidence like his cooperation with the AFOSI, depression caused by being away

from home, good duty performance, service in a combat zone, and other information. His post-trial clemency matters resulted in the convening authority further reducing his adjudged confinement. In our opinion, but for the fact that he received a bad-conduct discharge and his wife did not, this case would normally have been submitted to us for a review on the merits. Therefore, we find no reason to order the ADC to provide this court with a responsive affidavit or the appellant with her files. Our decision would be the same no matter who served as the appellant's ADC because we find no evidence that either attorney's performance fell below the standards ordinarily expected of lawyers in cases of this nature. *Polk,* 32 M.J. at 153.

■ Finally, we conclude that the ADC was not ineffective because she failed to turn over her files on the appellant's case to appellate defense counsel. The e-mails make it clear that the ADC wanted to know what information appellate counsel needed and why. This seems reasonable to us. It should also strike a chord with appellate defense counsel because, short of an order from a court of competent jurisdiction, he has no authority to compel trial defense counsel's cooperation. *See Ingham,* 42 M.J. at 224. Furthermore, while other counsel may voluntarily elect to turn over their case files, this does not establish a precedent for others. Since *Lewis,* Air Force trial defense counsel accused of ineffective assistance of counsel have routinely elected not to provide a responsive affidavit until we order them to do so. We view the ADC's refusal in this case in the same context, and we decline to order her to turn over her files.

The approved findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). Accordingly, the approved findings and sentence are

AFFIRMED.